JOSEPH W. COTCHETT (SBN 36324)
BRIAN DANITZ (SBN 247403)
GIA JUNG (340160)
CAROLINE YUEN (SBN 354388)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcom Road
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577
jcotchett@cpmlegal.com
bdanitz@cpmlegal.com
gjung@cpmlegal.com
cyuen@cpmlegal.com

LESLEY E. WEAVER (SBN 191305)
ANNE K. DAVIS (SBN 267090)
JOSHUA D. SAMRA (SBN 313050)
**BLEICHMAR FONT & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
T: (410) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

KARIN B. SWOPE (*pro hac vice*)
THOMAS E. LOESER (SBN 202724)
ANDREW FULLER (*pro hac vice* forthcoming)
JACOB ALHADEFF (*pro hac vice* forthcoming)
**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
T: (206) 802-1272
F: (206) 299-4184
kswope@cpmlegal.com
tloeser@cpmlegal.com
afuller@cpmlegal.com
jalhadeff@cpmlegal.com

*Counsel for Plaintiff Tasha Alexander*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| GRADY HENDRIX, JENNIFER ROBERSON, SUSANA MARTINEZ-CONDE, STEPHEN L. MACKNIK, and TASHA ALEXANDER,<br><br>    Individual and Representative Plaintiffs,<br><br>    v.<br><br>APPLE INC., CRAIG FEDERIGHI, and JOHN GIANNANDREA,<br><br>                Defendants. | Case No. 4:25-cv-07558-YGR<br><br>**PLAINTIFF TASHA ALEXANDER'S NOTICE OF MOTION; MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL; AND MEMORANDUM IN SUPPORT**<br><br>**FED. R. CIV. P. 23(g); Civil L.R. 7-11**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Date:     December 30, 2025<br>Time      2:00 p.m.<br>Courtroom: 1, Fourth Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................3

I.      INTRODUCTION .............................................................................................................3

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................................4

      A.     The Allegations .....................................................................................................4

      B.     Procedural Background .........................................................................................5

III.    ARGUMENT .....................................................................................................................6

      A.     Legal Standard ......................................................................................................6

      B.     Interim Counsel Should Be Appointed to Lead the Consolidated Cases ...............7

            1.     Interim Counsel Have Worked to Advance the Cases ...............................7

            2.     Interim Lead Counsel Have the Class Action Experience and Knowledge of Privacy Law – and Work Together for Efficient Results ....8

            3.     Proposed Interim Counsel Regularly Take Cases to Trial .......................16

            4.     Proposed Interim Counsel Will Commit Ample Resources to Prosecute the Cases Efficiently ..................................................................16

            5.     Proposed Interim Counsel Are Committed to Diversity and Inclusion ....17

            6.     Proposed Interim Counsel Have the Ability to Work Cooperatively With Others ...........................................................................................17

IV.    CONCLUSION ...............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adedipe v. U.S. Bank, Nat. Ass'n,*
    No. 13–2687 (JNE/JJK), 2014 WL 835174 (D. Minn. Mar. 4, 2014)......................................7

*Azpeitia v. Tesoro Ref. & Mktg. Co. LLC,*
    No. 17-cv-00123-JST, 2017 WL 4071368 (N.D. Cal. Sept. 14, 2017) ...............................6

*Case v. Merlin Entertainments Grp. v. U.S. Holdings Inc.,*
    No. 20-cv-01049-JAH-MSB, 2021 WL 1195813 (S.D. Cal. Mar. 30, 2021) ..........................9

*Crocker v. KV Pharmaceutical Co.,*
    No. 4:09-CV-198 (CEJ), 2009 WL 1297684 (E.D. Miss. May 7, 2009)...................................9

*In re F21 OPCO LLC Data Breach Litig.,*
    No. 2:23-cv-07390-MEMF-AGR, 2024 WL 2984018 (C.D. Cal. June 12, 2024)....................7

*In re Lenovo Adware Litig.,*
    No. 15-md-02624, 2015 WL 10890657 (N.D. Cal. July 27, 2015)...........................................7

*Pecznick v. Amazon.com, Inc.,*
    No. 2:22-cv-00743-TL, 2022 WL 4483123 (W.D. Wash. Sept. 27, 2022) ..............................7

*In re Robinhood Outage Litig.,*
    No. 20-cv-01626-JD, 2020 WL 7330596 (N.D. Cal. Jul. 14, 2020) .....................................17

*In re Stubhub Refund Litig.,*
    No. 20-md-02951-HSG, 2020 WL 8669823 (N.D. Cal. Nov. 18, 2020) ...............................17

**Statutes**

17 U.S.C. § 501.............................................................................................................................5

**Rules**

Fed. R. Civ. P. 23(g) ...........................................................................................................6, 7, 8, 16

**Other Authorities**

Manual for Complex Litig., § 21.11 (4th ed. 2004).......................................................................6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 30, 2025, before the Honorable Yvonne Gonzalez Rogers of the United States District Court, Northern District of California, Courtroom 1, 4th Floor, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiff Tasha Alexander will and hereby move for an order in the consolidated cases *Alexander v. Apple Inc., et al.*, No. 4:25-cv-09090-YGR (N.D. Cal. Filed Oct. 22, 2025) (*Alexander*), *Hendrix, et al. v. Apple Inc.*, No. 4:25-cv-07558-YGR (N.D. Cal. Filed Sept. 5, 2025) (*Hendrix*), and *Martinez-Conde, et al. v. Apple Inc.*, Case No. 4:25-cv-08695-YGR (N.D. Cal. Filed Oct. 9, 2025) (*Martinez-Conde*), appointing Karin B. Swope of Cotchett, Pitre & McCarthy LLP and Anne K. Davis of Bleichmar Fonti & Auld LLP as Interim Co-Lead Counsel.

This motion is brought under Federal Rule of Civil Procedure 23(g). Interim Co-Lead Counsel satisfy all criteria under Rule 23(g). As a team and individually, Interim Co-Lead Counsels' knowledge and experience in prosecuting cutting-edge, complex lawsuits, including leading class actions against specifically Apple Inc. ("Apple"), has already served the class extremely well.

Interim Lead Counsel have demonstrated in this case: (1) their willingness and ability to commit substantial time and resources for the benefit of class members; (2) the ability to work cooperatively with one another and with others; (3) the efficient and strategic execution of a litigation plan that benefits and protects class members; and (4) access to more than sufficient resources to prosecute this litigation, in a timely manner, to resolution.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declarations of Karin B. Swope and Anne K. Davis, and any additional argument and evidence the Court may consider at the hearing.

Dated: November 21, 2025

**COTCHETT, PITRE & MCCARTHY, LLP**

By: */s/ Karin B. Swope*
KARIN B. SWOPE (*pro hac vice*)

THOMAS E. LOESER (SBN 202724)
ANDREW FULLER (*pro hac vice* forthcoming)
JACOB ALHADEFF (*pro hac vice* forthcoming)
**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
T: (206) 802-1272
F: (206) 299-4184
kswope@cpmlegal.com
tloeser@cpmlegal.com
afuller@cpmlegal.com
jalhadeff@cpmlegal.com

JOSEPH W. COTCHETT (SBN 36324)
BRIAN DANITZ (SBN 247403)
GIA JUNG (340160)
CAROLINE YUEN (SBN 354388)
840 Malcom Road
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577
jcotchett@cpmlegal.com
bdanitz@cpmlegal.com
giung@cpmlegal.com
cyuen@cpmlegal.com

**BLEICHMAR FONT & AULD LLP**

By: */s/ Anne K. Davis*
LESLEY E. WEAVER (SBN 191305)
ANNE K. DAVIS (SBN 267090)
JOSHUA D. SAMRA (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
T: (410) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

*Counsel for Plaintiff Tasha Alexander*

## STATEMENT OF ISSUES TO BE DECIDED

1.    Should the Court appoint Karin B. Swope of Cotchett Pitre & McCarthy and Anne K. Davis of Bleichmar Fonti & Auld as Interim Co-lead Counsel pursuant to Rule 23(g)?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Counsel in the *Alexander* matter, both talented litigators with skills directly applicable to this case, respectfully seek appointment to serve as Interim Co-Lead Counsel. Ms. Swope and Ms. Davis amply satisfy Rule 23(g)'s mandate of being the "best able to represent the interests of the class." They are two highly-sophisticated litigators with firsthand experience leading major class actions against well-funded big tech defendants, including Apple. Ms. Swope teaches copyright law and has litigated numerous highly-complex and groundbreaking copyright and intellectual property matters. Ms. Davis is a highly practical and effective leader who understands the complexities of litigating the claim at issue here: a copyright claim arising from the development of generative AI models. It is also the right structure—two leaders and firms who have worked exceedingly well together in complex actions, and drawing on the substantial resources of Cotchett, Pitre & McCarthy, LLP ("CPM") and Bleichmar Fonti & Auld LLP ("BFA"). And their appointment recognizes the importance of offering opportunities to lawyers who have earned them and deserve the chance to develop their skills as leaders.

Ms. Swope and Ms. Davis have also already demonstrated initiative in this case. The *Alexander* complaint stands out by its robust and original allegations drawing from their investigation into Apple's conduct, as well as insights these firms have developed through their involvement in prior copyright matters. Ms. Swope and Ms. Davis have also facilitated the orderly prosecution of this case through coordination with lawyers on both sides of the v. They drafted the stipulation to consolidate the plaintiffs' matters and set a briefing schedule on interim counsel leadership motions, and closely coordinated with co-plaintiffs' counsel and opposing counsel in reaching an accord on the final stipulation. Indeed, Ms. Swope and Ms. Davis have effectively co-counseled with the other plaintiffs' firms and have strong working relationships with them.

Because these two outstanding lawyers have the knowledge, acumen, resources, good

judgment, and perseverance to vigorously prosecute this matter to final resolution, they respectfully ask that the Court grant their interim appointment as Interim Co-Lead Counsel.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Allegations

Apple built its generative artificial intelligence product—Apple Intelligence—using the copyrighted works of Plaintiff and the Class. Despite exploiting the hard work and copyrighted property of Plaintiff and the Class to construct a leading artificial intelligence product, Apple did not even disclose its copying of those works, and paid the Class nothing for doing so. Plaintiff and the Class sue to vindicate and protect their intellectual property and to be compensated for Apple's gross violations of the federal copyright laws.

Apple Intelligence is a collection of writing, image, personal assistance, and other tools powered by generative AI. *See Alexander*, ECF No. 1 ("Alexander Compl."), ¶ 2, 8. Apple integrates Apple Intelligence into its products, like the iPhone or Apple Watch. *Id.* Apple Intelligence is powered by a large language model ("LLM"), that attempts to mimic human reasoning abilities and natural language by analyzing data—also called its "training"—and using its analysis of that data to offer natural language responses to users' prompts. *Id.* ¶¶ 4, 9, 12, 32–33, 41–42. Apple Intelligence also relies on text-to-image diffusion models that analyze images and the relationship between text and images, and uses that training to create new images in response to users' requests. *Id.*

The company has admitted that it used several sources for training its models. *Id.* ¶¶ 69–70. Among those were the RedPajama, C4, and PILE datasets, a subpart of each was Books3, a digital compilation of thousands of pirated copyrighted works. *Id.* ¶¶ 69–74. Apple Intelligence has now been trained on, and irreversibly entangled with, copyrighted works. *Id.* ¶ 17. Because even the initial act of copying known pirated materials constitutes copyright infringement, this is a very strong case on that basis alone. Plaintiff Alexander, a renowned writer of historical fiction, is an author of three copyrighted books that were included in Books3 and which Apple unlawfully exploited to build its artificial intelligence models. *Id.* ¶ 21. The proposed class is comprised only of holders of copyrighted works used to develop Apple's AI products.

Craig Federighi and John Giannandrea are Apple executives who played key roles in the company's decision to violate the federal copyright laws by training Apple Intelligence and its models on Plaintiff Alexander and the Class's copyrighted works. Craig Federighi is Apple's Senior Vice President of Software Engineering at Apple. He oversees Apple's AI strategy including Apple Intelligence. *Id.* ¶¶ 23, 96, 96 n.63. John Giannandrea is Apple's Senior Vice President of Machine Learning and AI Strategy. He too was personally involved in the training of Apple's AI models and the company's decision to use and exploit the copyrighted works in question. *Id.* ¶¶ 24, 96, 96 n.63.

Apple neither sought permission nor paid Plaintiff Alexander and the Class a dime for its exploitation and use of their copyrighted works. *Id.* ¶ 4. And in using their works to build Apple Intelligence, Apple has created artificial intelligence models that compete with and displace their works. *Id.* ¶ 20. Plaintiff Alexander sues so that she and others similarly-situated may be informed that their copyrighted works are being used; so that they are offered a choice as to whether their works are used to train Apple's AI; and so that, if they so choose, that they are properly compensated for Apple's violations of their rights under the federal copyright laws.

**B.    Procedural Background**

Grady Hendrix and Jennifer Roberson filed their complaint against Apple on September 5, 2025. *See Hendrix*, ECF No. 1. ("Hendrix Compl."). On October 9, 2025, the Martinez-Conde plaintiffs filed their complaint. *See Martinez-Conde*, ECF No. 1 ("Martinez-Conde Compl."). Ms. Alexander filed her Complaint against Apple, Mr. Federighi, and Mr. Giannandrea on October 22, 2025. *See* Alexander Compl.

In all three matters, the plaintiffs are authors alleging that Apple violated their copyrights by exploiting their works to train its artificial intelligence models. *See* Hendrix Compl. ¶¶ 6, 12–14; Martinez-Conde Compl. ¶¶ 9, 20–21. All three plaintiffs bring the same cause of action—a single claim of direct copyright infringement under 17 U.S.C. § 501. *Id.* ¶¶ 101–104; Hendrix Compl. ¶¶ 83–86; Alexander Compl. ¶¶ 144–55.

There are two major differences between the complaints. The first is that Ms. Alexander brought claims against not only Apple, but also Craig Federighi and John Giannandrea, Apple

executives who played key roles in deciding to violate the intellectual property rights of the Class. Unlike Ms. Alexander, the Martinez-Conde and Hendrix plaintiffs brought no such claims and only seek to hold Apple accountable.

The second key difference is that the Alexander Complaint raises allegations to counter the Fair Use defense, which is commonly raised in motions to dismiss by defendants facing federal copyright claims. *See* Alexander Compl. ¶¶ 116–29. For example, the *Alexander* Complaint alleges that Defendant used pirated copyrighted work, and as such, cannot access the Fair Use Defense. Alexander Compl. ¶ 117. These key allegations will benefit any future consolidated complaint. On November 14, 2025, the Court entered the parties' stipulated order: (1) consolidating *Alexander*, *Hendrix*, and *Martinez-Conde*; (2) holding in abeyance Apple's deadlines to respond to the complaints in the three matters; (3) vacating case management conferences scheduled in the matters; (4) setting a briefing schedule on motions for the appointment of leadership; and (5) setting deadlines, after leadership has been decided, for the filing of a consolidated complaint, an answer or motion to dismiss, and for the submission of a proposed case scheduling order.

## III.    ARGUMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 23(g) authorizes courts to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2017 WL 4071368, at *2 (N.D. Cal. Sept. 14, 2017) (quoting Manual for Complex Litig., § 21.11 (4th ed. 2004)).

Rule 23(g)(1)(A) requires that courts consider four factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

counsel will commit to representing the class." Federal courts look to those factors in appointing interim lead counsel as well. *See In re F21 OPCO LLC Data Breach Litig.*, No. 2:23-cv-07390-MEMF-AGR, 2024 WL 2984018, at *2 n.4 (C.D. Cal. June 12, 2024) ("Courts considering the appointment of interim class counsel apply the same analysis" as the Rule 23(g)(1)(A) factors); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2015 WL 10890657, at *1 n.1 (N.D. Cal. July 27, 2015) ("[T]he factors in [Rule 23(g)(1)(A)] are those a court must consider in appointing lead counsel, rather than interim lead counsel. However, courts have held that these same factors apply in . . . the selection of interim lead counsel."). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(B).

**B.    Interim Counsel Should Be Appointed to Lead the Consolidated Cases**

As provided below, each Rule 23(g) factor supports the appointment of Ms. Swope and Ms. Davis ("Proposed Interim Counsel") to serve as interim lead counsel for Class in these consolidated cases.

**1.    Interim Counsel Have Worked to Advance the Cases**

Proposed Interim Counsel have best positioned the Class for potential success in this action and have, by far, "shown more care and attention in this early stage of litigation than their competitor." *See Pecznick v. Amazon.com, Inc.*, No. 2:22-cv-00743-TL, 2022 WL 4483123, at *5 (W.D. Wash. Sept. 27, 2022) (selecting as interim lead the proposed team that filed the "more thorough" complaint); *see also Adedipe v. U.S. Bank, Nat. Ass'n*, No. 13–2687 (JNE/JJK), 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing firms that "devoted the more substantial effort toward pre-suit investigation and identification of claims."). Their client, Ms. Alexander, is the only plaintiff who brought Apple executives into this case and sought to ensure that Craig Federighi and John Giannandrea are held accountable for their leading roles in having Apple blatantly infringe the copyrights of the Class. In addition to potentially enhancing the value of this litigation, the inclusion of Craig Federighi and John Giannandrea also sends an important deterrent message to leaders in the generative AI community that plaintiffs may hold them personally liable for violating their copyrights.

Ms. Alexander's complaint also details allegations to counter Apple's likely Fair Use defense. The Fair Use doctrine is very frequently the centerpiece of motions to dismiss in copyright matters. The Class benefits from having as Interim Lead Counsel those attorneys who took the care to anticipate a likely defense and invested time and resources pleading a complaint that is designed to prevail against it.

Finally, Proposed Interim Counsel's care and attention to this matter is also demonstrated by their leadership in organizing this litigation. They negotiated amongst all the parties and drafted the stipulation to consolidate the plaintiffs' matters and to set a unified briefing schedule on interim counsel leadership motions. They also closely coordinated with co-plaintiffs' counsel and opposing counsel in reaching an accord on the final stipulation. Proposed Interim Counsel's more extensive pre-suit investigation of claims and defenses, their care and attention to this matter, strongly supports their appointment as Interim Lead Counsel.

### 2. Interim Lead Counsel Have the Class Action Experience and Knowledge of Privacy Law – and Work Together for Efficient Results

Rule 23(g) (1)(A)(ii) considers "counsel's experience in handling class actions, other complex litigation, and *the types of claims asserted in the action*." (emphasis added). Here, the Proposed Interim Counsel are by far the strongest choice as to the claims asserted here. Proposed Interim Counsel have extensive and extraordinary records litigating highly complex copyright and intellectual property matters. Proposed Interim Counsel have worked together before, efficiently and effectively, in the *In re Google RTB Consumer Privacy Litigation*, No. 21-cv-02155 (N.D. Cal.) case. Ms. Swope is an Adjunct Professor of copyright and intellectual property and has educated the next generation of attorneys on these subjects for almost two decades. Ms. Davis, who started her legal career at Morrison & Foerster, brings sophisticated insight into all negotiations required in complex litigation like this. She is currently part of the team leading the action on the same claim against Google for violation of copyright protections based on similar facts. Their firms also have extraordinary records of achievement. The firm resumes of CPM and BFA are attached as Exhibits A and B, respectively, to the Joint Declaration of Karin B. Swope

and Anne K. Davis. Together, Proposed Interim Counsel have the right background and record to lead this case.

>    a.    **Karin B. Swope brings over 32 years of experience litigating groundbreaking cases, including intellectual property matters, against the country's largest technology companies.**

Karin B. Swope co-manages the Seattle Office of Cotchett, Pitre & McCarthy. Ms. Swope began her career as a federal judicial law clerk to the Honorable John C. Coughenour of the U.S. District Court for the Western District of Washington and the Honorable Robert E. Cowen of the U.S. Court of Appeals for the Third Circuit.

Ms. Swope is an expert in intellectual property and intellectual property litigation. She is a former President of the Intellectual Property Section of the Washington State Bar Association and has been an Adjunct Professor of copyright and intellectual property law at Seattle University Law School for 18 years. Her almost two decades of experience teaching copyright and intellectual property is a distinguishing factor here that will inure to the benefit of the Class. *See Case v. Merlin Entertainments Grp. v. U.S. Holdings Inc.*, No. 20-cv-01049-JAH-MSB, 2021 WL 1195813, at *5 (S.D. Cal. Mar. 30, 2021) (agreeing that class action litigator who was also an adjunct professor in consumer law for 11 years had "more years of experience prosecuting consumer class actions and significant knowledge of the relevant law" than other movants' counsel); *Crocker v. KV Pharmaceutical Co.*, No. 4:09-CV-198 (CEJ), 2009 WL 1297684, at *2 (E.D. Miss. May 7, 2009) (finding Rule 23(g)(1)(A)(iv) factor—the resources that counsel will commit to representing the class—favored the ultimately selected firm in part because a professor in the case's subject matter was of counsel there).

For 32 years, Ms. Swope has litigated intellectual property matters. Early in her career, she represented DirecTV and the Recording Industry Association of America in protecting copyright owners' intellectual property rights in hundreds of copyright infringement actions across the United States. She has continued to litigate intellectual property infringement matters, including copyright disputes, throughout her career. *See Navajo Nation v. Urban Outfitters Inc. et al.,* No. 1:12-cv-00195-BB-LAM (D. N.M.) (trademark infringement and dilution); *SRC Labs, LLC, et al. v. Microsoft Corp.*, No. 2:18-cv-00321-JLR (W.D. Wash.) (patent); *Microsoft Corp v.*

*Lindows, Inc.*, No. 2:01-cv-02115-JCC (W.D. Wash.) (trademark infringement and dilution); *Java Trading Co, et al. v. Puroast Coffee Inc, et al.*, No. 2:02-cv-00817-JCC (W.D. Wash.) (trademark infringement); *Microsoft Corp v. JDO Media Inc., et al.*, 2:04-cv-00515-MJP (W.D. Wash.) (trademark infringement); *Nat. Flood Ser. Inc. v Torrent Techs. Inc.*, No. 2:05-cv-01350-TSZ (W.D. Wash.) (copyright); *Soaring Helmet Corporation v. Bill Me Inc., et al.*, No. 2:09-cv-00789-JLR (W.D. Wash.) (trademark infringement); *Skinny Dip, Inc. v. Skinny Dip Yogurt, LLC*, No. 2:11-cv-01032-MJP (W.D. Wash.) (trademark infringement); *Nautilus Group Inc. v. Savvier Inc., et al.*, No. 3:04-cv-05031-RBL (W.D. Wash.) (trademark infringement and dilution).

Ms. Swope has also deep experience litigating large consumer class actions against titans of the tech industry, including Apple. She represented plaintiffs in *Landsheft v. Apple Inc.*, No. 5:25-cv-02668-NW (N.D. Cal.) (false advertising case), *In re Apple Device Performance Litigation*, No. 18-MD-2827 (N.D. Cal.) (consumer protection case), *Google RTB Consumer Privacy Litigation*, No. 21-cv-02155 (N.D. Cal.) (privacy case), and *In re Zoom Video Communications, Inc. Privacy Litigation* No. 20-cv-02155 (N.D. Cal) (privacy case). As part of her appointment to the Executive Committee in *In re Apple Device Performance Litigation*, the court also appointed Ms. Swope co-chair of the Offensive Discovery and ESI Coordination Committee. In that role, the court charged Ms. Swope with responsibility for coordinating all plaintiffs' discovery and ESI practices in the litigation.

Ms. Swope leads a team of lawyers at CPM that have deep experience litigating consumer class action cases. The team includes Joesph Cotchett, Tom Loeser, and Andrew Fuller.

As stated by the *National Law Journal*, Joseph W. Cotchett is considered by plaintiffs and defense attorneys alike to be one of the foremost trial lawyers in the country. He has been named one of the 100 most influential lawyers in the nation for the past 20 years. In recent years, he has been in the Top 3 for best attorneys in Northern California. In 2019 he was named Consumer Attorney of the Year for his 20-year fight against lead paint manufacturers for poisoning California's most vulnerable children, with a judgement of over $1 billion for communities. In the 1980s, Mr. Cotchett won mammoth judgments and settlements for investors in white-collar fraud cases, with jury verdicts of more than $200 million arising out of the collapse of the Technical

Equities Corporation in San Jose. He is known nationally as the lead trial lawyer for 23,000 plaintiffs in the *Lincoln Savings & Loan Association/American Continental Corp*. case in 1990 involving Charles Keating, his lawyers, accountants and bankers in Tucson, Arizona. He won a jury verdict of $3.3 billion, one of the ten largest jury verdicts in United States history. He obtained nearly $450 million in settlements from lawyers, accountants and other professionals caught up in the scandal. During his 60-plus year legal career, Mr. Cotchett has tried more than 100 cases to a jury, and settled hundreds more.

Tom Loeser is a career technologist who began as an MBA analyst at Microsoft at the Hewlett-Packard Company in Silicon Valley before pivoting to law. He spent two years in technology licensing and litigation in Silicon Valley before his appointment as an AUSA in Los Angeles, where he prosecuted technology-related federal crimes. For the last 20 years, he has prosecuted technology-centered civil cases that involve unfair business practices, egregious corporate malfeasance, or massive privacy failures exposing the information of tens of millions of consumers. For these reasons, he is presently serving in leadership of two nationwide MDL cases, *In re T-Mobile 2022 Consumer Data Security Breach Litigation* ("T-Mobile II") and *In re AT&T, Inc. Customer Data Security Breach Litigation* ("AT&T"). Mr. Loeser was also recently appointed to leadership in *In re Consumer Vehicle Driving Data Tracking Litigation*, a highly complex nationwide MDL involving complex vehicle tracking information that was being used to unfairly raise car insurance rates, and to the Executive Committee in *In re Allstate and Arity Consumer Privacy Litig.*, another complex technology case concerning alleged tracking of "inferred driving behavior" through smartphone apps. Mr. Loeser was also appointed Co-Lead Interim Class Counsel in *In re RetailMeNot Browser Extension Litigation*, a case involving the use of browser extensions to unfairly redirect sales commissions earned by online influencers. *See* Joint Decl., Ex A (firm resume).

Andrew Fuller has represented plaintiffs in class actions against leading technology companies, including recently in *Robinson v. TikTok*, No. 2:25-cv-08813-GW-RAO (N.D. Cal.), *In Re PayPal Honey Browser Extension Litig.*, No. 5:24-cv-09470-BLF (N.D. Cal.), and *Hanson v. Segway*, No. 2:25-cv-01436 (W.D. Wash.). Mr. Fuller is a former federal judicial law clerk to

the Honorable Paul C. Huck of the U.S. District Court for the Southern District of Florida. He is also involved in his local bar community, including the Federal Bar Association of the Western District of Washington and the LGBTQ+ Law Section of the Washington State Bar Association. *See* Joint Decl., Ex A (firm resume).

### b. Anne K. Davis brings more than 15 years of experience, litigating cutting-edge copyright, privacy and consumer protection matters involving emerging technologies

Anne K. Davis is an accomplished litigator with more than fifteen years of experience prosecuting and defending high-stakes consumer, antitrust, and securities matters in federal and state courts nationwide. Her track record demonstrates precisely the blend of leadership, subject-matter expertise, and executional rigor contemplated by Rule 23(g), and it strongly supports her appointment to co-lead this action efficiently and effectively on behalf of the proposed class.

Ms. Davis has significant experience in litigating *In re Google Generative AI Copyright Litigation* (N.D. Cal.), a case that, like this action, challenges the practice of using copyright materials to train AI language models, addressing issues in the intersection of AI technology and copyright law. Her hands-on leadership in this active AI-and-copyright case equips her to address the novel issues here.

Ms. Davis has played central roles in some of the nation's most consequential consumer-privacy litigations. She was a key member of the small plaintiffs' team that litigated *In re Facebook, Inc. Consumer Privacy User Profile Litigation* to a $725 million recovery—the largest privacy settlement resolved through private litigation—after years of intensive discovery and motion practice. She likewise helped drive *In re Google RTB Consumer Privacy Litigation*, where a groundbreaking settlement was noticed following sustained discovery and class-certification briefing. She is also actively litigating *In re: Allstate & Arity Consumer Privacy Litigation* and *Siefke v. Toyota Motor North America, Inc. et al.*, challenging alleged unlawful harvesting and monetization of consumer data. These matters reflect both her mastery of complex, technology-forward privacy disputes and her ability to steer them toward meaningful class relief.

Her antitrust experience is similarly robust. Ms. Davis has been integral to the plaintiffs' teams in *In re Local TV Advertising Antitrust Litigation* (with $48 million in settlements to date),

*In re Domestic Airlines Travel Antitrust Litigation* (totaling $60 million in settlements with continued litigation against remaining defendants), and *In re Mexican Government Bonds Antitrust Litigation* (securing ice-breaker settlements and defeating a motion to dismiss in full). She has also contributed to major automotive and product-safety litigations, including *In re ZF-TRW Airbag Control Units Products Liability Litigation*, which has yielded settlements exceeding $149 million to date.

Beyond litigation results, Ms. Davis's leadership credentials are exceptional. She was named to the 2025 Lawdragon 500 Leading Plaintiff Consumer Lawyers and is a National Trial Lawyers Top 100 Litigator (2023–2025). She serves on the Executive Committee of the California Lawyers Association's Antitrust and Unfair Competition Law Section, is a Senior Editor of the California Antitrust and Unfair Competition Law Treatise, contributes to The Sedona Conference Working Groups on Data Security and Privacy Liability (WG11) and AI and the Law (WG13), and is on the drafting team for the forthcoming Sedona Data Privacy Primer, Second Edition. She also serves on the faculty for PLI's Accounting for Lawyers program, reflecting her fluency with complex damages and economic issues that frequently shape class litigation strategy, and is a frequent speaker on e-Discovery. Ms. Davis's background further equips her to lead efficiently and with sound judgment. Prior to joining BFA, she served as Principal Counsel for Sales Practice Enforcement at FINRA, where she investigated and litigated matters involving federal securities laws and SEC/MSRB/FINRA rules—experience that honed her investigative skills and enforcement mindset.

Ms. Davis leads a team dedicated to litigating complex, cutting-edge matters addressing new and developing technologies, including those arising from the emergence of Generative AI, including Lesley E. Weaver, Gregory S. Mullens, and Joshua D. Samra.

Lesley Weaver is the Partner in Charge of BFA's California office, and the head of BFA's Antitrust and Consumer Litigation Teams. Ms. Weaver is an experienced, soup-to-nuts litigator who has deep experience with the legal and technical issues central to emerging technologies such as those at issue in this action. As one of two Co-Lead Counsel appointed by Judge Vince Chhabria in the Northern District of California to lead the high-profile MDL against Facebook arising out

MOTION TO APPOINT INTERIM LEAD COUNSEL – 13
CASE NO. 4:25-cv-07558-YGR

of the Cambridge Analytica scandal, Ms. Weaver and her team, including Ms. Davis, steered the case to a $725 million settlement after five years of tenacious litigation, yielding at least two landmark decisions of national import. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899 (N.D. Cal. 2023); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019).

Ms. Weaver is acting as Co-Lead Counsel in *In re Google Generative AI Copyright Litigation*. Ms. Weaver is a member of the Plaintiffs' Executive Committee for *In re Google RTB Consumer Privacy Litigation*, No. 21-cv-02155 (N.D. Cal.), and serves on the Plaintiffs' Steering Committee in *In re ZF-TRW Airbag Control Units Products Liability Litigation*. In 2015, Ms. Weaver was appointed by Judge Breyer to the Plaintiffs' Steering Committee "legal dream team" in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 15-md-02672 (N.D. Cal.). The PSC recovered roughly $17 billion for U.S. consumers and public entities, including $5 billion allocated to environmental causes, the largest automotive class action recovery ever. Ms. Weaver was actively involved in settlement negotiations overseen by Special Master Robert Mueller and led discovery in German of defendant Bosch. Ms. Weaver is also one of the few lawyers to try a privacy case to a jury in the U.S. In 2015, Ms. Weaver won a complete jury verdict in one of the few privacy cases to go to trial in the country, which awarded 100% of economic damages and $15 million in punitive damages.

Ms. Weaver has received numerous awards throughout her career. Ms. Weaver was named by The National Law Journal as one of just ten Elite Women in the Plaintiffs' Bar nationally in 2023; one of the Top 500 Leading Plaintiff Consumer Lawyers as well as Financial Lawyers by Lawdragon; one of the Top 100 Plaintiffs Lawyers by the National Trial Lawyers; and the prestigious recognition as California Attorney of the Year in 2018 by the Daily Journal. She has been deemed a SuperLawyer since 2016; holds a Tier 1 Chambers ranking; and was inducted into the Fellows of the American Bar Association in 2017. More important than this external recognition is Ms. Weaver's sincere commitment to her cases and the profession. She has served as a Lawyer Representative for the Northern District of California, and co-chaired many board of non-profit organizations, including Bay Area Lawyers for Individual Freedom; the national

advisory board for the National Center for Lesbian Rights; the SF LGBT Community Center; and many others.

Gregory S. Mullens has over a decade of experience litigating complex matters in the public and private sectors, in both state and federal court. He is an accomplished trial attorney with over forty trials under his belt, including acting as first-chair on ten jury trials to verdict. Mr. Mullens currently focuses his practice on complex investigations and litigation of antitrust and consumer matters. Mr. Mullens is involved in all aspects of the Firm's Antitrust and Consumer investigations and litigations, including *In re Google Generative AI Copyright Litigation*, *Ji, et al. v. Naver Corp.*, and *In re Bank of America Unauthorized Account Opening Litigation*.

Before BFA, Mr. Mullens was Counsel at a litigation boutique in New Jersey where he was regularly called upon to lead internal investigations and run the defense of individual and corporate clients in a wide range of federal and state matters, including those involving the U.S. Department of Justice, U.S. Attorneys' Offices, Offices of Inspectors General, and State Attorneys General. Mr. Mullens began his legal career as a prosecutor for the Hudson County Prosecutor's Office (New Jersey). After serving in the trial division, Mr. Mullens was promoted to the Office's Gangs and Narcotics Task Force, where he led the specialized unit's investigation and prosecution of high-priority criminal targets, including RICO enterprises, money laundering networks, firearms and narcotics traffickers, and street gangs.

Joshua D. Samra is a Senior Associate in the Firm's Antitrust and Consumer practice group, and is involved in all aspects of the Firm's antitrust and consumer investigations and litigations. Mr. Samra was a significant member of the teams litigating *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, which resulted in the largest privacy class action settlement in history at $725 million; the *In re Google RTB Consumer Privacy Litigation* team, in which a groundbreaking settlement was recently noticed after four years of hard-fought litigation; and in *In re Wells Fargo & Co. Consolidated Derivative Shareholder Litigation*, a derivative shareholder action, which recently reached a settlement valued at $110 million. Mr. Samra currently plays an important role on the teams litigating *In re Google Generative AI Copyright*

*Litigation*, *Ji, et al. v. Naver Corp., et al.*, *In re Local TV Advertising Antitrust Litigation*, and *In re Bank of America Unauthorized Account Opening Litigation*.

Mr. Samra has been selected by Thompson Reuters *Super Lawyers* as a "Northern California Rising Star" for years 2023-2025 and by Best Lawyers as *"One to Watch"* for 2025. Prior to joining BFA, Mr. Samra was a Deputy District Attorney where he oversaw all parts of criminal prosecutions, including arguing pre-trial motions, trying cases before a jury, and litigating post-trial appeals. Mr. Samra has prosecuted ten jury trials to verdict.

Mr. Samra is an active member and contributor to The Sedona Conference, Working Group 1 on Electronic Document Retention and Production, and Working Group 6 on International Electronic Information Management, Discovery, and Disclosure.

Ms. Davis and her team's generative AI copyright litigation experience, leadership in complex privacy, consumer, and antitrust actions, and recognized leadership in the bar present a compelling case for her appointment as Interim Co-Lead Counsel with Ms. Swope. Her appointment will benefit the Class and the Court through experienced, coordinated, and cost-effective leadership.

### 3. Proposed Interim Counsel Regularly Take Cases to Trial

Proposed Interim Counsel all have extensive experience trying complex cases and are willing and able to take this litigation to trial, if necessary. Joint Decl. ¶4. Additional information about Proposed Interim Counsel's trial experience can be found in their respective firm resumes, attached as Exhibits A and B to their joint declaration.

### 4. Proposed Interim Counsel Will Commit Ample Resources to Prosecute the Cases Efficiently

Proposed Interim Counsel have the resources needed to prosecute this action in the best interests of the proposed class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). Together, CPM and BFA are ably staffed with attorneys and support, employing more than 53 lawyers in 11 offices across the United States. Proposed Interim Counsel routinely advance the costs of litigation and are not using litigation funders for this case. They have repeatedly demonstrated the ability and willingness to dedicate substantial resources to pursuing class claims and will do so again here.

Proposed Interim Counsel are also committed to litigating the case efficiently and economically, and they will use their experience and background in similar cases to streamline the litigation for the benefit of the plaintiff classes. Proposed Interim Counsel are well-versed in using case management strategies to efficiently focus litigation, including appropriate staffing of all litigation tasks, and implementation of strict time-keeping and expense billing protocols to ensure that all professional time associated with these cases is of the highest quality, and demonstrates efficiency and effectiveness. The lean proposed leadership structure also demonstrates Proposed Interim Counsel's commitment to efficiency.

### 5.    Proposed Interim Counsel Are Committed to Diversity and Inclusion

While not a factor identified by Fed. R. Civ. P. 23(g), diversity among proposed leadership has and should be considered by the Court. *See, e.g.*, *In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. Jul. 14, 2020) (declining to appoint Cotchett Pitre and Kaplan Fox due to the "concern[] about lack of diversity in the proposed lead counsel"); *In re Stubhub Refund Litig.*, No. 20-md-02951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020) (noting with approval co-lead counsel's "careful attention to creating a diverse team".) Here, the attorneys and professionals that will be staffed on this are also diverse. Proposed Interim Counsel routinely staff cases with diverse attorneys and professionals at all levels and will do so here, including prioritizing providing substantive and meaningful experience to attorneys, especially junior attorneys, in all stages of a case.

### 6.    Proposed Interim Counsel Have the Ability to Work Cooperatively With Others

Proposed Interim Counsel have the ability and willingness to work cooperatively with other law firms, including other plaintiffs' lawyers that have filed (or may file) similar actions, and counsel for Apple. Proposed Interim Counsel understand that professional and courteous relations amongst joint counsel, as well as between opposing counsel, are essential to the conduct and management of complex litigation such as this one. In fact, as evidenced by their leadership in obtaining an agreed stipulation on consolidation and leadership briefing, Proposed Interim Counsel have already demonstrated a willingness to work cooperatively in litigating these cases.

Further, Proposed Interim Counsel are open to being appointed with other lawyers whose cases have been consolidated with the *Alexander* case, in any arrangement the Court deems necessary.

**IV.    CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court appoint Karin B. Swope of Cotchett, Pitre & McCarthy, LLP and Anne K. Davis of Bleichmar Fonti & Auld LLP as Interim Co-Lead Counsel.

Dated: November 21, 2025          **COTCHETT, PITRE & MCCARTHY, LLP**

By: */s/ Karin B. Swope*
KARIN B. SWOPE (*pro hac vice*)
THOMAS E. LOESER (SBN 202724)
ANDREW FULLER (*pro hac vice* forthcoming)
JACOB ALHADEFF (*pro hac vice* forthcoming)
**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
T: (206) 802-1272
F: (206) 299-4184
kswope@cpmlegal.com
tloeser@cpmlegal.com
afuller@cpmlegal.com
jalhadeff@cpmlegal.com

JOSEPH W. COTCHETT (SBN 36324)
BRIAN DANITZ (SBN 247403)
GIA JUNG (340160)
CAROLINE YUEN (SBN 354388)
840 Malcom Road
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577
jcotchett@cpmlegal.com
bdanitz@cpmlegal.com
giung@cpmlegal.com
cyuen@cpmlegal.com

**BLEICHMAR FONT & AULD LLP**

By: */s/ Anne K. Davis*
LESLEY E. WEAVER (SBN 191305)
ANNE K. DAVIS (SBN 267090)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOSHUA D. SAMRA (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
T: (410) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

*Counsel for Plaintiff Tasha Alexander*

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Anne K. Davis, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of November, 2025, at Pacifica, California.

*/s/ Anne K. Davis*
Anne K. Davis