**KELLER ROHRBACK L.L.P.**
William Dreher (*pro hac vice*)
 wdreher@kellerrohrback.com
Derek W. Loeser (*pro hac vice*)
 dloeser@kellerrohrback.com
Cari C. Laufenberg (*pro hac vice*)
 claufenberg@kellerrohrback.com
Benjamin Gould (Bar No. 250630)
 bgould@kkellerrohrback.com
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3268
Telephone: +1.206.623.1900

**BUTTERICK LAW PC**
Matthew Butterick (Bar No. 250953)
 mb@butticklaw.com
1920 Hillhurst Avenue #406
Los Angeles, CA 90027
Telephone: +1.323.968.2632

**SUSMAN GODFREY L.L.P.**
Rohit D. Nath (Bar No. 316062)
 rnath@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: +1.310.789.3100

Justin A. Nelson (*pro hac vice*)
 jnelson@susmangodfrey.com
Alejandra C. Salinas (*pro hac vice*)
 asalinas@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: +1.713-653-7802

*Attorneys for Plaintiffs*
*Additional Counsel on Signature Page*

**LATHAM & WATKINS LLP**
Andrew M. Gass (Bar No. 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (Bar No. 238008)
 joe.wetzel@lw.com
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
 nicole.valco@lw.com
505 Montgomery St., Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Elana Nightingale Dawson (*pro hac vice*)
 elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| GRADY HENDRIX ET AL.,<br><br>Individual and Representative Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No.  4:25-cv-07558-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT AND 26(F) REPORT**<br><br>Date: May 11, 2026<br>Time: 2:00 PM<br>Place: Via Zoom<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

Pursuant to Federal Rule of Civil Procedure 16(b), Civil Local Rules 16-9 and 16-10, the Clerk's Notice Setting Case Management Conference, Dkt. 84, the Standing Order for All Judges of the Northern District of California, and the Court's Order dated November 14, 2025, Dkt. 42, Plaintiffs Grady Hendrix, Jennifer Roberson, John Hornor Jacobs, and Eboni McKinnon (a/k/a Kianna Alexander) (together, "Plaintiffs"), and Defendant Apple Inc. ("Apple" and, together with Plaintiffs, the "Parties") submit this Initial Joint Case Management Conference Statement and Rule 26(f) Report.

Pursuant to Federal Rule of Civil Procedure 26(f), a conference was held on April 15, 2026, during which the Parties, by and through their undersigned counsel, met and conferred concerning the topics set forth in Rule 26(f) and the United States District Court for the Northern District of California's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information and guidelines for the Discovery of Electronically Stored Information. The Parties continue to engage in discussions about these topics, as discussed further below.

## I.   <u>JURISDICTION AND SERVICE</u>

Plaintiffs allege this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and under the Copyright Act of 1976, 17 U.S.C. § 501 *et seq*. Apple does not challenge personal jurisdiction. No parties remain to be served.

## II.   <u>FACTS</u>

### A.   Plaintiffs' Statement

In its quest to rapidly build an AI model capable of competing with those of its rivals, Apple has pirated hundreds of thousands or millions of unlicensed copyrighted works to train its AI models. Apple has used "shadow libraries" widely known to contain pirated works, such as the Books3 library, to build its own datasets and permanent training-data library, which contains copies of the pirated works. Compl. ¶¶ 2, 65. Apple also has used a web crawler, "Applebot," that scrapes massive quantities of webpages, to copy unlicensed copyrighted books, including without notice or authorization. *Id.* ¶ 3. Apple introduced what it called the OpenELM models in 2024, followed by the Foundation Language Models and the commercial AI software platform Apple Intelligence. Apple has promoted, provided access to, integrated, and commercially benefited from

JOINT CASE MANAGEMENT STATEMENT
CASE NO. 4:25-cv-07558-YGR

adoption, integration, and use of its OpenELM models, Foundation Language Models, and Apple Intelligence in a variety of ways. *See id.* ¶¶ 30, 48, 52, 69.

Apple could have paid for licensing rights to copy, compile, and use works for its training data, but chose not to. It has secured AI licensing agreements with several major media outlets but chose to take Plaintiffs' works for free. *Id.* ¶¶ 75-76. Plaintiffs are authors and owners of registered copyrights whose works were included in the Books3 pirated dataset that Apple used. *Id.* at ¶ 61. Apple's AI models compete with Plaintiffs' and Class Members' works. All of these models are designed to, and can, generate outputs that may substitute the kinds of expressive written work that Plaintiffs are hired to produce. *See id.* ¶ 80. Apple itself has claimed that its models can be used by developers to create apps that "generat[e] creative content," and has highlighted its Foundation Language Model's ability to "[c]ompose creative writing," among other tasks. *Id.* ¶ 70.

### B.    Apple's Statement

Apple approached its development of generative AI technology, including the large language models at issue in this case, the same way it approaches the development of all new products and technology—carefully, deliberately, and methodically.  Apple's approach included the adoption and implementation of robust, and continually evolving, processes and procedures designed to protect its users' privacy, manage Apple's acquisition of data, and track Apple's training of generative AI technology.  The result of those efforts are the models at issue in this case—models that Apple created lawfully.

Apple's Machine Learning Research team engages in cutting edge research on everything from increased accessibility through machine learning to privacy-protecting methods of data analysis.[1]  In 2024, Apple's research team created OpenELM, a series of large language models that Apple released for free and permissively licensed.[2]  Because replicability is a key component to scientific research, Apple also published a paper on how Apple created the model.[3]  Apple's goal with the release of OpenELM and the publication of the OpenELM research paper was to

---

[1] *Machine Learning Research at Apple*, https://machinelearning.apple.com/.

[2] *apple/OpenELM*, https://huggingface.co/apple/OpenELM.

[3] *OpenELM: An Efficient Language Model Family with Open Training and Inference Framework*, https://arxiv.org/abs/2404.14619.

empower and strengthen the open research community in order to pave the way for future open research endeavors.[4]

Apple's Machine Learning and AI team is focused on Apple's development of customer-facing generative AI models, including Apple Foundation Models ("AFM")—the Apple large language models that power Apple Intelligence. As Apple explained in its July 2024 paper on AFM, Apple trained multiple instances of AFM during its development of the models.[5] Apple started anew its training process for each AFM instance. After training several internal AFM instances, Apple made AFM available on Apple devices with its Apple Intelligence release in October 2024.[6] In so doing, Apple combined its market-leading commitment to privacy with integrated, on-device AI functions and features powered by, *inter alia*, AFM.

Apple's training of large language models using datasets containing many billions, if not trillions, of words was fair use, not copyright infringement. Indeed, the first two courts in this District to address the issue agreed that training large language models on copyrighted works is fair use. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1019 (N.D. Cal. 2025); *see also Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1044 (N.D. Cal. 2025) ("highly transformative"). The models at issue in those cases powered commercially released general-purpose AI systems that could be used to generate open-ended written content. Here, in contrast, the models at issue do *not* power general-purpose, standalone AI systems. *See generally* Compl. ¶¶ 31, 52. OpenELM, which has never been commercially released or sold, was created exclusively for research and scholarship purposes. And AFM, through Apple Intelligence, is integrated into Apple products and services to simplify and accelerate everyday tasks. That narrower functionality makes this a particularly easy case.

Plaintiffs nevertheless seek to represent a putative class of copyright owners challenging Apple's specific AI development and features. As an initial matter, Apple's fair use defense is

---

[4] *OpenELM: An Efficient Language Model Family with Open Training and Inference Framework*, https://machinelearning.apple.com/research/openelm.

[5] *Apple Intelligence Foundation Language Models*, https://arxiv.org/pdf/2407.21075.

[6] *Apple Intelligence comes to iPhone, iPad, and Mac starting next month*, https://www.apple.com/newsroom/2024/09/apple-intelligence-comes-to-iphone-ipad-and-mac-starting-next-month/.

dispositive as to the entire case because it applies even on the most favorable hypothetical factual record that a plaintiff copyright owner could hope to develop. But even taken on its own terms, the putative class Plaintiffs seek to represent is highly diverse, implicating a multitude of individualized issues. As Plaintiffs acknowledge, Apple trained OpenELM and AFM on, *inter alia*, data Apple obtained via licenses with publishers. *See* Compl. ¶ 4. Whether any particular work is within the scope of such licenses will necessarily require an individualized, work-by-work analysis. That is but one of many individualized issues present here, which also include issues of authorship, ownership, registration, validity, nature of the works at issue, markets for diverse copyrighted works, market harm, equitable defenses, entitlement to certain remedies, and damages. Indeed, in the past month and a half, seven purported members of the putative class in this case, all of whom opted out of the settlement with Anthropic in *Bartz v. Anthropic*, No. 3:24-cv-05417-AMO,[7] filed two lawsuits against Apple with the same single count of copyright infringement based on substantially overlapping factual allegations.[8]

Apple anticipates that the principal facts in dispute will include who owns the copyrighted works Plaintiffs seek to assert, what the markets for each of those works are, and whether the cognizable licensing markets for each work have been usurped by Apple's alleged uses at issue in this case. Apple anticipates that further factual disputes may arise during the course of discovery.

## III.   LEGAL ISSUES

### A.   Plaintiffs' Statement

Plaintiffs contend the principal legal issues presented in this case include the following:

1.   Whether Plaintiffs may certify a class under Rule 23 of the

Federal Rules of Civil Procedure;

2.   Whether Apple infringed Plaintiffs' copyrighted works by reproducing them

---

[7] *See, e.g.*, Am. Compl., *Cambronne*, No. 25-cv-10897-PCP, Dkt. 119 ("Plaintiffs elect not to bring this case as a class action because the Copyright Act entitles them to recover individualized statutory damages . . . . Plaintiffs desire to retain full control of their case and avoid having their rights diluted by being swept into sprawling class-action settlements."); *see also Bartz v. Anthropic*, No. 3:24-cv-5417-AMO, Dkt. 625.

[8] *See* Am. Compl., *Cambronne Inc., et al. v. Anthropic PBC et al.*, No. 25-cv-10897-PCP, Dkt. 119; Compl., *Chicken Soup for the Soul, LLC v. Anthropic PBC et al.*, No. 26-cv-2333-VC, Dkt. 1.

without authorization and using them in training its large language models;

3. Whether Apple willfully infringed Plaintiffs' copyrighted works;

4. Whether any affirmative defense excuses Apple's conduct, including the fair use doctrine.

**B.     Apple's Statement**

Apple anticipates that at least the following points of law may be disputed:

1. Whether Plaintiffs own the copyrights in the works they are asserting. *See* 17 U.S.C. § 501(a).

2. Whether Plaintiffs have valid copyright registrations for the works they are asserting. *See* 17 U.S.C. § 411(a).

3. Whether Apple engaged in any prima facie acts of copyright infringement of Plaintiffs' copyrighted works. 17 U.S.C. § 106.

4. Whether Apple's alleged use of copyrighted works was fair use. *See* 17 U.S.C. § 107; *see also, e.g.*, *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1019 (N.D. Cal. 2025); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1044 (N.D. Cal. 2025).

5. Whether any of Apple's alleged use of copyrighted materials was permitted by another affirmative defense, such as express or implied license, waiver, abandonment, acquiescence, forfeiture, laches, estoppel, public domain, statute of limitations, merger, scenes a faire, and de minimis use. *See* Dkt. 83 (Answer) at 22–23.

6. Whether Plaintiffs can satisfy the requirements of Federal Rule of Civil Procedure 23 for class certification given the highly individualized inquiries required to resolve issues related to, *inter alia*, market harm, copyright ownership, registration/validity, licensing, and damages.

**IV.    MOTIONS**

***Pending Motions.***  There are no pending motions at this time.

***Resolved Motions.***  The Court has resolved two administrative motions to relate cases to this action. Dkt. Nos. 37 and 40. The Court has resolved all motions for appointment of interim co-lead counsel. Dkt. No. 79.

JOINT CASE MANAGEMENT STATEMENT
CASE NO. 4:25-cv-07558-YGR

### A.      Plaintiffs' Statement

***Administrative Motion to Consider Whether Cases Should Be Related:*** Apple refers to cases brought by two plaintiffs and indicates that Apple may seek to relate any future cases by those plaintiffs against Apple to this case. See *Cambronne Inc., et al. v. Anthropic PBC et al.*, No. 5:25-cv-10897-PCP and *Chicken Soup for the Soul, LLC v. Anthropic PBC et al.*, No. 3:26-cv-02333-VC. Whether or not that occurs, this case's schedule should not be affected or delayed by the potential for those cases to be related, or their future relation to this case.

***Motion for Class Certification:*** Plaintiffs anticipate moving for class certification, including for the reasons outlined below in Section IX, as well as in Section VI of the Consolidated Class Action Complaint, Dkt. No. 81, because Plaintiffs are numerous and identifiable; Plaintiffs' claims are typical of the Class; representation of the Class's interests is adequate; common questions of law and fact across the Class predominate; and allowing the claims to proceed on a class basis will promote efficiency and avoid risks of inconsistent adjudication and repetitive litigation. Class certification in this case is straightforward for the same reasons set forth in Judge Alsup's order granting class certification in *Bartz v. Anthropic*. Order on Class Certification (Dkt. No. 244), No. 3:24-cv-05417-WHA (N.D. Cal. July 17, 2025).

***Motion for Partial Summary Judgment:*** Plaintiffs anticipate that they may move for partial summary judgment on discrete issues of liability and/or specific infringing uses, depending on how discovery develops.

***Response regarding Apple's Anticipated Motion for Summary Judgment on Fair Use:*** Apple has requested a schedule that stages summary judgment briefing before class certification briefing and made it clear that it intends to file a motion for summary judgment. Plaintiffs are amenable to a schedule that puts summary judgment briefing first, provided that Apple waives its one-way intervention defense. *See, e.g.*, *Corns v. Laborers Int'l Union of N. Am.*, No. 09-cv-4403-YGR, 2014 WL 1319363, at *3-4 (N.D. Cal. Mar. 31, 2014) ("While a district court has discretion to consider summary judgment prior to deciding class certification, it should do so when the parties will not suffer significant prejudice and defendant has consented to waive the protection afforded by an earlier ruling on class certification."). Apple cites no authority for the position that a

defendant can condition its waiver on the Court entering the precise scheduling order it prefers. Apple can waive the defense or not, but once it has, the Court has authority over the schedule of briefing of summary judgment and class certification.

*Other Anticipated Motions:* Plaintiffs intend to file this week a proposed billing protocol for all Plaintiffs' counsel in this case, and a statement regarding responsibilities of Interim Co-Lead Counsel, for proposed inclusion in an initial case management order.

**B.    Apple's Statement**

*Administrative Motion to Consider Whether Cases Should Be Related.*  In the past month, two lawsuits have been filed by members of the putative class in this case against Apple and other defendants for copyright infringement.  *See Cambronne Inc., et al. v. Anthropic PBC et al.*, No. 25-cv-10897-PCP; *Chicken Soup for the Soul, LLC v. Anthropic PBC et al.*, No. 26-cv-2333-VC. These cases are brought by seven individual plaintiffs who opted out of the settlement with Anthropic in *Bartz v. Anthropic*, No. 3:24-cv-05417-AMO.

In *Cambronne*, Apple, Anthropic, Google, OpenAI, Meta, Perplexity AI, xAI, and NVIDIA, have each moved to sever the claims brought against each of them pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure.[9]  The claims against the OpenAI and Meta defendants were both severed pursuant to stipulation.[10]  The hearing on Apple's motion to sever is currently scheduled for May 12, 2026.  If Judge Pitts grants Apple's motion to sever and the plaintiffs file a new complaint against Apple, Apple anticipates filing an administrative motion to consider whether the newly filed case should be related to this action.

Apple was also named as a defendant in a nearly identical case brought by Chicken Soup for the Soul, LLC, currently pending before Judge Chhabria.  *Chicken Soup for the Soul, LLC*, No. 26-cv-2333-VC.  On April 10, 2026, Judge Chhabria *sua sponte* severed all defendants and dismissed the claims against all defendants except Meta Platforms, Inc. without prejudice, ordering that "the plaintiff, if it wishes to pursue claims against those defendants [other than Meta], must

---

[9] *Cambronne Inc.*, No. 5:25-cv-10897-PCP, Dkts. 94 (Google); 98 (OpenAI); 106 (Anthropic); 112 (Perplexity AI); 114 (Meta); 115 (xAI); 161 (Apple); 164 (NVIDIA).

[10] *Id.*, Dkts. 99, 171.

file new, separate lawsuits against each of them." Dkt. 32. Judge Chhabria ordered that Meta remain as the sole defendant "because the claims against Meta appear related to *Kadrey v. Meta* (23-cv-3417) and *Entrepreneur Media v. Meta* (25-cv-9579), which are already before the undersigned judge." *Id.* Should Chicken Soup for the Soul LLC refile the same claim against Apple, Apple anticipates filing an administrative motion to consider whether the newly filed case should be related to this action.

**Motion for Coordination.** Should *Cambronne* and/or *Chicken Soup* (to the extent refiled against Apple) be related to this case, Apple anticipates filing a motion requesting coordination of discovery as between those cases and this one.

**Motion for Summary Judgment.** Apple anticipates moving for summary judgment on Plaintiffs' copyright infringement claims at least on the basis that Apple's conduct, as alleged in the complaint, constitutes fair use. As explained in the Joint Statement Regarding Proposed Case Schedule (Dkt. 85), given the potentially dispositive nature of Apple's anticipated motion for summary judgment, Apple believes that any motions for summary judgment should be considered and resolved prior to consideration of whether class certification is appropriate in this case. *See* Dkt. 85 at 2-4. This sequencing is further supported by the fact that copyright claims are generally poor candidates for class-action treatment because they turn on facts particular to each individual claim of infringement, including individualized issues of ownership, registration, validity, and damages. And if the Court agrees that Apple's use of the works constitutes fair use, and that the steps of downloading and storing the works cannot be disconnected from training, Plaintiffs would be left with a market dilution theory that is inherently not susceptible to class-wide treatment because it requires individualized analysis of the impact on each work's potential market (if any).

Plaintiffs have agreed to sequence summary judgment ahead of class certification but ask the Court to schedule class certification briefing approximately 1.5 months after the close of summary judgment briefing, and to stage "summary judgment briefing ahead of class certification only if Apple fully and completely waives any right to raise the defense of one-way intervention." Dkt. 85 at 2. But requiring the Parties to brief class certification regardless of whether the Court has ruled on pending motions for summary judgment would defeat the efficiencies of sequencing

summary judgment and class certification.  And Plaintiffs do not explain why Apple should have to waive any objection it may have under the one-way intervention rule should the Court adopt the briefing schedule Plaintiffs propose, and Plaintiffs' demand that Apple waive its rights even if the Court does not decide summary judgment prior to class certification is inconsistent with relevant law.  *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974); *see also Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995).

## V.    AMENDMENT OF PLEADINGS

Plaintiffs filed a consolidated class action complaint on February 13, 2026, Dkt. 81, which Apple answered on March 30, 2026. Dkt. 83.

The Parties do not currently anticipate further amendments to the pleadings and proposed a deadline of November 1, 2026 to amend the pleadings or add new parties, *see* Dkt. 85, but reserve their right to do so consistent with the Federal Rules of Civil Procedure and the Civil Local Rules of this Court.

## VI.    EVIDENCE PRESERVATION

The Parties have reviewed the Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines") and met and conferred pursuant to Federal Rule of Civil Procedure 26(f), including on April 15, 2026, regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

The Parties have exchanged a draft of an ESI protocol governing discovery of ESI in this matter, as well as drafts of a protective order, and are attempting to reach agreement as to as many aspects of these protocols as possible.

During the meet and confer, the Parties discussed the items on the Northern District of California's ESI Checklist. The Parties discussed their respective efforts at preservation and anticipated sources of ESI, and Plaintiffs disclosed their ESI Liaison. Apple has also identified an ESI Liaison. The Parties anticipate further negotiation regarding the number of appropriate custodians and depositions.

## VII.    DISCLOSURES

The Parties exchanged Rule 26(a)(1) initial disclosures on May 1, 2026.

## VIII.    <u>DISCOVERY</u>

***Production of Electronically Stored Information & Other Proposed Orders:*** The Parties have met and conferred pursuant to Rule 26(f) and have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. As noted above, the Parties are meeting and conferring regarding a stipulated ESI order and protective order.

***Privilege***: The Parties are conferring regarding a potential stipulation for a Privileged Materials Order under Rule 502(d).

***Discovery Disputes:*** There are no discovery disputes to identify, and the Parties will meet and confer on any discovery disputes that may arise in an effort to resolve them without court intervention.

### A.    Plaintiffs' Statement

***Scope of Anticipated Discovery:*** Plaintiffs have served their first set of requests for production and requests for admission, seeking discovery related to, *inter alia*, Apple's downloading, torrenting, scraping, copying, compiling, and use of Plaintiffs' and Class Members' works, including to train its AI models; Apple's knowledge of downloading, torrenting, scraping, copying, compiling, and using those works; the contribution of those works to the performance of Apple's AI models, products, and services; the market(s) for Apple's AI models, products, and services, as well as their uses, users, and outputs; and Apple's participation in the licensing market(s) for copyrighted works. Plaintiffs will continue to seek discovery related to these and other relevant topics and reserve all rights.

As part of discovery related to these topics, Plaintiffs sought and will seek discovery of, *inter alia*, training data, source code, Apple employees' use of AI chat products, communications between Apple and shadow libraries, and other documents related to Apple's downloading, torrenting, scraping, copying, compiling, and use of Plaintiffs' and Class Members' works.

***Discovery Limits:*** The Parties have not yet conferred regarding the applicable limits for discovery. Given the complexity of this action, Plaintiffs anticipate seeking to modify the default limits contemplated by the Federal Rules of Civil Procedure and Local Rules.

***Production of Electronically Stored Information & Other Proposed Orders:*** Plaintiffs do not believe that a separate inspection protocol to govern the inspection of training data is necessary.

### B.      Apple's Statement

***Scope of Anticipated Discovery.***  The Parties have met and conferred regarding a discovery schedule.  *See infra* Section XV.  Apple does not contemplate any phasing of discovery at this time.  Apple served its first set of requests for production and interrogatories on Plaintiffs, and Apple identifies the following subjects as to which it has sought or may seek discovery from Plaintiffs:  the creation, ownership, and copyright registration of the works Plaintiffs are asserting in this case (the "Asserted Works"); potential agreements related to the Asserted Works, including all licenses covering the Asserted Works; the markets for the Asserted Works; sales of and revenue from the Asserted Works; the harm Plaintiffs allege to have suffered as a result of the conduct alleged in the complaint; and Plaintiffs' use of Apple products powered by Apple Intelligence.  Apple reserves all rights to expand upon these subjects as the case proceeds.

***Discovery Limits***.  Apple believes that the applicable limits for discovery should apply to each side, as opposed to each Party.  Apple does not believe that, at present, there is a need to modify the default limits contemplated by the Federal Rules of Civil Procedure and Local Rules.

***Production of Electronically Stored Information & Other Proposed Orders.***  Apple has explained to Plaintiffs that Apple does not have possession, custody, or control of the conversation logs generated by end-users in the ordinary course of their use of the models at issue.  Apple believes that an inspection protocol to govern any inspection of training data will be appropriate.

## IX.     CLASS ACTIONS

As required by Civil Local Rule 16-9(b), all attorneys of record certify that they have reviewed the Procedural Guidance for Class Action Settlements and provide the following additional information regarding the class action allegations.

### A.      Plaintiffs' Statement

Class certification is appropriate because Apple's conduct equally impacted and is common to the class, and the evidence needed to prove Plaintiffs' claims is common to the class. Plaintiffs

intend to move to certify a class under Fed. R. Civ. P. 23(b)(3), Fed. R. Civ. P. 23(b)(2), and/or Fed. R. Civ. P. 23(c)(4). The Consolidated Complaint defines the class as follows:

> All beneficial or legal owners of a registered United States copyright in any work that was 1) used in one or more of the Apple Uses during the Class Period, and 2) was registered with the United States Copyright Office a) within five years of the work's publication and before its use in one or more of the Apple Uses, or b) within three months of publication.

Compl. ¶ 85. Consistent with Rule 23(c)(1)(B)-(C), Plaintiffs may modify this definition of the putative class when moving for class certification. Plaintiffs' proposed schedule for the Court to consider whether the case can be maintained as a class action has been outlined in the parties' Joint Statement Regarding Proposed Case Schedule, Dkt. No. 85.

Publicly available information indicates that Apple, like other AI companies, downloaded, torrented, scraped, copied, compiled, and used books wholesale or in bulk, not in a manner that was individualized by book or author. Thus, Plaintiffs' and Class Members' claims turn on common questions of fact and law that include:

a.    Whether Apple acquired or downloaded reproductions of datasets, including but not limited to the RedPajama and Books3 datasets, that included Plaintiffs' and Class Members' copyrighted works;

b.    Whether Apple copied Plaintiffs' and Class Members' works as part of Apple's scraping of the public internet using Applebot or other methods;

c.    Whether Apple included Plaintiffs' and Class Members' works in any of the datasets used by Apple to train its OpenELM models and Foundation Language Models;

d.    Whether Apple's inclusion of Plaintiffs' and Class Members' works in those datasets constituted or required the works' reproduction by Apple;

e.    Whether Apple lacked authorization to reproduce copies of Plaintiffs' and Class Members' works;

f.  Whether Apple violated the copyrights of Plaintiffs and the Class when it acquired or downloaded copies of Plaintiffs' and Class Members' works and used them in training its OpenELM models;

g.  Whether Apple violated the copyrights of Plaintiffs and the Class when it acquired or downloaded copies of Plaintiffs' and Class Members' works and used them in training its Foundation Language Models;

h.  Whether Apple violated the copyrights of Plaintiffs and the Class when it acquired or downloaded copies of Plaintiffs' and Class Members' works and retained them in a curated, private shadow library for Apple's use in training other models;

i.  Whether this Court should enjoin Defendant from engaging in the unlawful conduct alleged herein;

j.  Whether any affirmative defense excuses Defendant's conduct, including the fair use doctrine; and

k.  Whether Apple's infringement was willful.

**B.  Apple's Statement**

As explained in Section IV.B, Apple proposes that the Court consider any motions for summary judgment before addressing whether a class should be certified pursuant to Federal Rule of Civil Procedure 23 because a motion for summary judgment on Apple's fair use defense is likely to be dispositive or, at a minimum, narrow the issues in this case and shape the arguments the parties may raise concerning class certification.

Moreover, even if Plaintiffs could somehow overcome that fundamental barrier to their claims, this case could not proceed as a class action, given the highly individualized inquiries required to resolve issues related to market harm, copyright ownership, registration/validity, licensing, and damages. *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023) (explaining that "copyright claims are poor candidates for class-action treatment" because "[e]very copyright claim turns upon facts which are particular to that single claim of infringement, and separate from all the other claims" and "[e]very copyright claim is also subject to defenses that require their own individualized inquiries") (internal quotation marks and citations omitted); *see*

*also Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417-VC, Dkt. 700 at 5 n.1 (N.D. Cal. Mar. 25, 2026) ("market harm . . . will often be highly fact-dependent, such that training claims would likely be individualized"). Apple's position is that Plaintiffs cannot satisfy the requirements set forth in Rule 23.  Apple will oppose any motion for class certification.

## X.      RELATED CASES

This Court consolidated two other cases, *Martinez-Conde v. Apple Inc.*, No. 4:25-cv-08695 (N.D. Cal.) and *Alexander v. Apple Inc.*, No. 4:25-cv-09090 (N.D. Cal.) into this action. Dkt. No. 42.

As explained in Section IV.B, there is another case brought by putative class members who allege overlapping claims currently pending against Apple and several other defendants. *See Cambronne Inc.*, No. 5:25-cv-10897-PCP (N.D. Cal.). Apple (and each of the other defendants) has moved to sever the claims, *see id.*, Dkt. 161. That motion is pending. If it is granted, and if any *Cambronne* plaintiff refiles against Apple, Apple anticipates filing an Administrative Motion to Consider Whether Cases Should Be Related.

As explained in Section IV, in a separate case, the claim against Apple brought by Chicken Soup for the Soul LLC was dismissed without prejudice as improperly joined with claims against other defendants. *Chicken Soup for the Soul, LLC*, No. 3:26-cv-2333-VC, Dkt. 32. Should Chicken Soup for the Soul LLC refile the same claim against Apple, Apple anticipates filing an administrative motion to consider whether the newly filed case should be related to this action. Plaintiffs' position with respect to that possible motion is set forth in Section IV.A.

## XI.     RELIEF

### A.      Plaintiffs' Statement

Plaintiffs seek judgment against Apple and in favor of the proposed class as well as the following relief: (1) Certification of the proposed class action, with Plaintiffs serving as Class Representatives, and with Plaintiffs' counsel as Class Counsel; (2) Statutory damages under the Copyright Act, compensatory damages, restitution, disgorgement, and any other relief that may be permitted by law or equity; (3) An order permanently enjoining Apple from the infringing conduct alleged; (4) An order requiring destruction under 17 U.S.C. § 503(b) of all Apple LLMs that have

ingested at least one copy of any of Plaintiffs' and Class Members' works; (5) An order requiring destruction under 17 U.S.C. § 503(b) of all copies of those works that are maintained in Apple's private libraries and datasets; (6) An award of costs, expenses, and attorneys' fees as permitted by law; and (7) Such other or further relief as the Court may deem appropriate, just, and equitable.

### B.   Apple's Statement

For the reasons stated in Sections II.B, III.B, and IX.B above, Apple disputes that Plaintiffs are entitled to any monetary or injunctive relief or that Plaintiffs' claims are appropriate for class certification, and reserves all of its defenses to liability and damages.   Apple believes it is premature to describe the bases on which damages should be calculated if liability is established.

## XII.   SETTLEMENT AND ADR

The Parties have complied with ADR L-R 3.5. The Parties have submitted ADR Certifications as required by this Court's Civil Local Rules. *See* Dkts. 44, 45, 46, 86, 87. The Parties do not believe settlement discussions would be productive at this time.

## XIII.   OTHER REFERENCES

The Parties do not believe that this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV.   NARROWING OF ISSUES

### A.   Plaintiffs' Statement

At this time, the Parties have not identified legal issues on which they have agreed. Certain factual allegations were admitted by Apple in its Answer to the Consolidated Complaint ("Answer," Dkt. No. 83). For instance, Apple admits that it has developed AI models, including the OpenELM models and Foundation Language Models, that at least some of these models are integrated into products Apple sells, and that "generative AI models . . . are part of Apple Intelligence," Answer at ¶¶ 2, 22. Apple specifically admits that it used "a subset of the RedPajama dataset" called "Books" to train the OpenELM models. *Id.* at ¶ 2. Apple admits that "RedPajama included a dataset that is sometimes referred to as 'Books3.'" *Id.* at ¶ 46. Apple also admits that "the datasets used to train certain AFM models contained books or portions thereof." *Id.* at ¶ 2. Apple further admits its use of Applebot to crawl the web since 2015 and specifically admits that

"Applebot data was used to train foundation models." *Id.* at ¶ 3, 62. Apple further admits that "the contents of training data for generative AI models can be a factor in the models' function." *Id.* at 4. The following three issues, among others, are consequential to the case:

1. Whether Apple acquired or downloaded reproductions of datasets, including but not limited to the RedPajama and Books3 datasets, that included Plaintiffs' and Class Members' copyrighted works, without authorization;

2. Whether Apple created additional copies of, or distributed, Plaintiffs' and Class Members' copyrighted works, without authorization;

3. Whether Apple's acquisition, downloading, copying, or distribution of Plaintiffs' and Class Members' copyrighted works constituted fair use.

### B.    Apple's Statement

Apple does not deny that it used textual data to train its generative AI models.[11]  Apple expects that its motion for summary judgment on its fair use defense will resolve this case in its entirety or, at a minimum, significantly narrow the issues.  *See, e.g.*, *Kadrey*, 788 F. Supp. 3d at 1044 (holding that Meta's training of an LLM on books was "highly transformative" and constituted fair use where plaintiffs failed to present evidence of actual market harm); *Bartz*, 78 F. Supp. 3d at 1022, 1033 (finding that Anthropic's training was highly transformative and constituted fair use).  If any of Plaintiffs' claims survive Apple's motion for summary judgment, Apple will consider whether the remaining issues can be narrowed by agreement or by motion.

### XV.    SCHEDULING

After conferring on the proposed case schedule, the Parties submitted a Joint Statement Regarding Proposed Case Schedule on April 17, 2026. *See* Dkt. No. 85. The Parties' outstanding disagreements were addressed in position statements as to disputed scheduling items. As noted in that filing, the Parties agreed to defer disputes over further interim discovery deadlines to this case management statement.

---

[11] Plaintiffs assert that Apple admitted that the OpenELM and Apple Foundation models "are integrated into products Apple sells."  Not so.  As stated in Apple's Answer, OpenELM is a "non-commercial research model that is not part of Apple Intelligence." Dkt. 83 (Answer), ¶ 2.

JOINT CASE MANAGEMENT STATEMENT
CASE NO. 4:25-cv-07558-YGR

## A.    Agreed Deadlines

The parties have agreed on the following deadlines:

| | |
|---|---|
| Parties submit stipulated Protective Order and, if necessary, file a joint letter brief on outstanding disputes pursuant to the Court's standing order (or standing order of an assigned magistrate judge, if applicable) | May 21, 2026 |
| Parties submit stipulated ESI Protocol and, if necessary, file a joint letter brief on outstanding disputes pursuant to the Court's standing order (or standing order of an assigned magistrate judge, if applicable) | June 3, 2026 |
| Parties conduct a technology tutorial for the Court | July / August 2026 (subject to scheduling availability) |
| Rolling deadline for either party to provide privilege logs | 60 days after each production |

*Technology Tutorial:* The Parties propose conducting a technology tutorial for the Court at the Court's convenience in July or August 2026, subject to the Court's, the Parties', and participants' schedules, to discuss the relevant technology at issue. The Parties further propose that such tutorial proceed according to the procedures set forth in paragraph 3 of the Court's Standing Order for Patent Cases. If the Court finds it appropriate to refer discovery to a magistrate judge, Apple proposes providing such technology tutorial to the assigned magistrate judge as well. In similar cases, courts in this District have found it appropriate to hold a technology tutorial, as proposed here. *See, e.g.*, *Bartz v. Anthropic PBC*, No. 24-cv-5417-WHA, Dkt. 64 (Nov. 18, 2024) (setting technology tutorial "to set forth the basic technology . . . at issue in this case); *Concord v. Anthropic*, No. 24-cv-3811-EKL-SVK, Dkt. 263 (Nov. 13, 2024) (requesting technology tutorial to "assist the Court in its resolution of the pending discovery dispute").

## B.    Plaintiffs' Statement

The following interim deadline would assist in moving the case expeditiously through discovery in a structured way. In Plaintiffs' experience, too often substantial production of document discovery does not occur until the discovery period is three-quarters over or later. That often leads to a flurry of last-minute discovery motions, an inappropriate rush to prepare for and

take depositions, and a request for an extension of the fact discovery period. While some of those items may be inevitable, setting a clear interim benchmark for production of discovery will ensure that if the Plaintiffs are having difficulty obtaining relevant discovery, the Court becomes aware of that fact early in the fact discovery period. This schedule also allows Plaintiffs to obtain substantial discovery ahead of the Parties' proposed November 1 deadline for amendment of pleadings.

| Substantial production of documents and data in response to discovery requests served by May 29, 2026 | October 15, 2026 |
|---|---|

### C.     Apple's Statement

Apple contends that the agreed upon deadlines in Section XV.A are sufficient to move this case forward expeditiously while minimizing the risk of unnecessary discovery and scheduling disputes.  Apple does not believe that an interim deadline for substantial completion of discovery is necessary at this time.  Moreover, Plaintiffs' proposal of a substantial completion date of October 15, 2026, for requests served by May 29, 2026, leaves insufficient time for the Parties to serve requests, negotiate written responses and objections, and to complete document and data productions, particularly in light of the sweeping nature of Plaintiffs' requests and potentially voluminous training and other data at issue.[12]  Moreover, a substantial completion deadline this early in the discovery period (almost eight months before the close of fact discovery) is unnecessary when the main goal of a substantial completion date is to encourage the Parties to conduct adequate document discovery early enough in the discovery period so that depositions can occur after.  However, if the Court is inclined to impose such a deadline, Apple proposes the Parties target a substantial completion date of February 15, 2027, for document productions in response to requests served on or before September 30, 2026.[13]  This substantial completion date leaves

[12] Plaintiffs' first set of requests contain 65 document requests, including broad requests for data that are untethered to the allegations in the case.

[13] If the Court agrees with Plaintiffs that a substantial completion deadline is warranted at this point, Apple respectfully submits that such deadline should be addressed in a separate order concerning discovery rather than the scheduling order, which requires the Court's intervention and a showing of good cause to change.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent"); *see also* Judge Yvonne Gonzalez Rogers

Case 4:25-cv-07558-YGR   Document 88   Filed 05/04/26   Page 20 of 23

nearly four months until the proposed close of fact discovery on June 4, 2027, which would allow the Parties reasonable time to complete depositions and any necessary supplemental productions, while also allowing sufficient time to respond in writing to requests and confer about objections and scope before substantial completion is required.  Apple's proposal minimizes the likelihood that Court intervention will be needed to address document production disputes by providing the Parties ample time to work through disputes on their own and also to comply with discovery obligations.

## XVI.   TRIAL

Plaintiffs have demanded a jury trial. *See* Dkt. 81. Apple has likewise demanded a trial by jury on all issues triable to a jury. The Parties respectfully submit that it is premature to set a trial readiness date or estimate the length of trial at this time.

## XVII.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs and Apple both filed certificates of interested entities under Civil Local Rule 3-15.  Dkts. 18, 26. Neither Party disclosed any conflict or interested parties, and neither is aware of any at this time.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

---

Standing Order in Civil Cases (updated Nov. 13, 2025), at 2 ("No changes to the Court's schedule shall be made except by signed order of the Court and only upon a showing of good cause.").

Respectfully submitted,

Dated: May 4, 2026

**KELLER ROHRBACK L.L.P.**

By */s/ William K. Dreher*
William K. Dreher (*pro hac vice*)
 wdreher@kellerrohrback.com
Benjamin Gould (Bar No. 250630)
 bgould@kellerrohrback.com
Derek W. Loeser (*pro hac vice*)
 dloeser@kellerrohrback.com
Cari C. Laufenberg (pro hac vice)
 claufenberg@kellerrohrback.com
Chris N. Ryder (*pro hac vice*)
 cryder@kellerrohrback.com
Elizabeth W. Tarbell (*pro hac vice*)
 etarbell@kellerrohrback.com
Samuel Rubenstein (*pro hac vice*)
 srubinstein@kellerrohrback.com
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3268
Telephone: +1.206.623.1900

**BUTTERICK LAW PC**
Matthew Butterick (Bar No. 250953)
 mb@but120ricklaw.com
1920 Hillhurst Avenue, #406
Los Angeles, California 90027
Telephone: +1.323.968.2632

**SUSMAN GODFREY L.L.P.**
Rohit D. Nath (Bar No. 316062)
 rnath@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: +1.310.789.3100

Justin A. Nelson (*pro hac vice*)
 jnelson@susmangodfrey.com
Alejandra C. Salinas (*pro hac vice*)
 asalinas@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: +1.713-653-7802

*Attorneys for Plaintiffs*

Dated: May 4, 2026

**LATHAM & WATKINS LLP**

By */s/ Nicole C. Valco*
Andrew M. Gass (Bar No. 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (Bar No. 238008)

joe.wetzel@lw.com
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
 nicole.valco@lw.com
505 Montgomery St., Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Elana Nightingale Dawson (*pro hac vice*)
 elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Apple Inc.*

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the **JOINT CASE MANAGEMENT STATEMENT**. Pursuant to Local Civil Rule 5-1(i)(3) regarding signatures, I, William K. Dreher, attest that the other signatory has concurred in the filing of the document.

Dated: May 4, 2026                                         /s/ *William K. Dreher*
                                                            William Dreher