**KELLER ROHRBACK L.L.P.**
William Dreher (*pro hac vice*)
 wdreher@kellerrohrback.com
Derek W. Loeser (*pro hac vice*)
 dloeser@kellerrohrback.com
Cari C. Laufenberg (*pro hac vice*)
 claufenberg@kellerrohrback.com
Benjamin Gould (Bar No. 250630)
 bgould@kkellerrohrback.com
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3268
Telephone: +1.206.623.1900

**BUTTERICK LAW PC**
Matthew Butterick (Bar No. 250953)
 mb@but300463law.com
1920 Hillhurst Avenue #406
Los Angeles, CA 90027
Telephone: +1.323.968.2632

**SUSMAN GODFREY L.L.P.**
Rohit D. Nath (Bar No. 316062)
 rnath@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: +1.310.789.3100

Justin A. Nelson (*pro hac vice*)
 jnelson@susmangodfrey.com
Alejandra C. Salinas (*pro hac vice*)
 asalinas@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: +1.713-653-7802

*Attorneys for Plaintiffs*
*Additional Counsel on Signature Page*

**LATHAM & WATKINS LLP**
Andrew M. Gass (Bar No. 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (Bar No. 238008)
 joe.wetzel@lw.com
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
 nicole.valco@lw.com
505 Montgomery St., Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Elana Nightingale Dawson (*pro hac vice*)
 elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| GRADY HENDRIX ET AL., <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 4:25-cv-07558-YGR <br><br> **JOINT STATEMENT REGARDING PROTECTIVE ORDER SUBMISSION AND DISPUTE** <br><br> Magistrate Judge:  Hon. Ajay S. Krishnan |

Pursuant to Section 5 of the Court's Civil Standing Order, Plaintiffs Grady Hendrix, Jennifer Roberson, John Hornor Jacobs, and Eboni McKinnon ("Plaintiffs"), and Defendant Apple Inc. ("Apple," and, together, the "Parties") submit this joint statement regarding a dispute on the proposed Protective Order ("PO") for this matter.

The Parties have agreed on certain minor changes from the District's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (the "Model PO"). Specifically, the Parties have agreed to:

- Clarify the definition of "Expert" to exclude past or current officers, directors, consultants, or employees of a Party or a Party's competitor since 2021 (Section 2.6 in Apple's Proposal, Section 2.7 in Plaintiffs' Proposal), which balances the need to protect the Parties' confidential information with the need to "guarantee[] that parties have access to witnesses who possess specialized knowledge," *Kane v. Chobani*, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013), and mirrors the five-year lookback period in Section 7.4.(a)(2) of the model order, which has been entered in comparable litigation. *See Bartz*, Dkt. 62 ¶ 10;

- Include a "Highly Confidential – Outside Attorneys' Eyes Only" designation (Sections 2.8 and 7.4 in Apple's Proposal, Sections 2.9 and 7.4 in Plaintiffs' Proposal, and in other places where the various designation levels are listed) applicable exclusively to extremely sensitive (i) license agreements or draft agreements, negotiations, and related internal communications or documents, and (ii) product roadmaps, disclosure of which to another Party or Non-Party would create a substantial risk of serious economic harm or significant competitive disadvantage that could not be avoided by less restrictive means; Discovery is likely to include this information from Apple (and third parties), and courts in this District in other generative AI cases have entered protective orders with similar provisions, including at the request of third parties responding to subpoenas;

- Expand the scope of persons allowed to view material designated as "Confidential" to include mock jurors, and of materials designated "Confidential" or "Highly Confidential – Attorneys' Eyes Only" to include stenographers, videographers, and mediators (Sections 7.2(e), 7.3(e));

- Expand the scope of persons allowed to view material designated as "Confidential" to include named Plaintiffs and employees or outside counsel of a Party's insurers in applicable scenarios (Sections 7.2(i)-(j));

- Reduce the time to challenge disclosure of Protected Material to House Counsel or Experts from 14 days to 7 business days (Section 7.5(b) in Apple's Proposal, Section 7.5(b) in Plaintiffs' Proposal), in line with challenge periods in similar litigation, including *In re Google*, Dkt. 119 at ¶ 7.4(b); *Github*, Dkt. 63 at ¶ 7.4(b); *Bartz*, Dkt. 62 at VII.4(b) (7 days); *In re OpenAI*, Dkt. 357 at ¶ 29(a); and

- Include an agreement pursuant to Federal Rule of Evidence 502(d) that the production of any material, whether inadvertent or otherwise, shall not constitute waiver, as contemplated by the Model PO (Section 14 in Apple's Proposal, Section 13 in Plaintiffs' Proposal).

JOINT STATEMENT RE:
PROTECTIVE ORDER SUBMISSION AND DISPUTE
CASE NO. 4:25-cv-07558-YGR

Nevertheless, the Parties have several remaining disputes regarding the PO.  The Parties conferred multiple times, including by videoconference on May 6, 8, 18, and 19, 2026, but were unable to reach resolution on these issues.

The Parties' respective positions on the disputed issues are set forth below.  The Parties' proposed POs and redline comparisons are attached as exhibits, as reflected below.  The changes to the Model PO (listed above) to which the Parties agree have been highlighted in blue on the redlines.

- **Exhibit 1**: Apple's proposed PO
- **Exhibit 2**: Redline comparison of Apple's proposed PO to the Model PO
- **Exhibit 3**: Plaintiffs' proposed PO
- **Exhibit 4**: Redline comparison of Plaintiffs' proposed PO to the Model PO

JOINT STATEMENT RE:
PROTECTIVE ORDER SUBMISSION AND DISPUTE
CASE NO. 4:25-cv-07558-YGR

Respectfully submitted,

Dated: May 21, 2026

**LATHAM & WATKINS LLP**

By */s/ Nicole C. Valco*
Andrew M. Gass (Bar No. 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (Bar No. 238008)
 joe.wetzel@lw.com
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
 nicole.valco@lw.com
505 Montgomery St., Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Elana Nightingale Dawson (*pro hac vice*)
 elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Apple Inc.*

Dated: May 21, 2026

**KELLER ROHRBACK L.L.P.**

By */s/ William K. Dreher*
William K. Dreher (*pro hac vice*)
 wdreher@kellerrohrback.com
Benjamin Gould (Bar No. 250630)
 bgould@kellerrohrback.com
Derek W. Loeser (*pro hac vice*)
 dloeser@kellerrohrback.com
Cari C. Laufenberg (pro hac vice)
 claufenberg@kellerrohrback.com
Chris N. Ryder (*pro hac vice*)
 cryder@kellerrohrback.com
Elizabeth W. Tarbell (*pro hac vice*)
 etarbell@kellerrohrback.com
Samuel Rubenstein (*pro hac vice*)
 srubinstein@kellerrohrback.com
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3268
Telephone: +1.206.623.1900

**BUTTERICK LAW PC**
Matthew Butterick (Bar No. 250953)
 mb@but)tericklaw.com
1920 Hillhurst Avenue, #406
Los Angeles, California 90027
Telephone: +1.323.968.2632

**SUSMAN GODFREY L.L.P.**
Rohit D. Nath (Bar No. 316062)
 rnath@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: +1.310.789.3100

Justin A. Nelson (*pro hac vice*)
 jnelson@susmangodfrey.com
Alejandra C. Salinas (*pro hac vice*)
 asalinas@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: +1.713-653-7802

*Attorneys for Plaintiffs*

## I.     **APPLE'S STATEMENT**

***The Protective Order should include all provisions from the Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets ("Model PO").*** Apple's development and training of its generative AI technology is at the center of this case, and thus discovery will necessarily implicate both highly sensitive confidential information and trade secrets related to Apple's development of the technology. Indeed, Plaintiffs have already told the Court that they plan to seek both "training data" and "source code." Dkt. 88 at 11. Plaintiffs concede that the Model PO, as opposed to N.D. Cal.'s standard model, should be used as a starting point in this case. But Plaintiffs omit two provisions provided by that model that are critical to protecting the highly sensitive and trade secret information at issue here.

Patent Prosecution Bar (Apple PO § 8). The Model PO's patent prosecution bar is warranted to protect the highly confidential technical information anticipated to be produced in this case. Apple's proposal is narrowly tailored to prohibit the use of produced material to develop patents involving the specific emerging technology at issue: "the functionality, operation, and design of large language models or generative artificial intelligence." Courts regularly enter POs with patent prosecution bars in similar generative AI cases, with similarly defined subject matter. *See Nazemian v. NVIDIA*, No. 24-cv-1454-JST (SK) (N.D. Cal. Nov. 5, 2025), Dkt. 208 ("*Nazemian* PO") § 7 (barring prosecution of patents relating to "artificial intelligence, machine learning, neural networks, or large language models"); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417-VC (N.D. Cal. Jan. 26, 2024), Dkt. 90 at § 8 ("*Kadrey* PO"); *Andersen v. Stability AI Ltd.*, No. 23-cv-201-WHO (N.D. Cal. Jan. 14, 2026), Dkt. 380 ("*Andersen* PO") § 8. Plaintiffs' effort to distinguish these cases based on their own refusal to agree to the Model PO's provision is self-serving and ignores the highly sensitive and confidential discovery at issue in this case.

Export Control (Apple PO § 15.3). Given the highly sensitive nature of technical information regarding the development of generative AI, and the severe penalties Apple could face for unauthorized export, *see* 50 U.S.C. § 4819(b)–(d), the Model PO's export control provision is needed and appropriate. Other courts in generative AI cases (including with the same plaintiffs' counsel), have found such provisions warranted. *See Kadrey* PO § 14.3; *Nazemian* PO § 14.3; *Andersen* PO § 14.3. And consistent with other POs entered in this District, Apple proposes a limited clarification to the model provision to prohibit protected material from being exported to foreign nationals. Courts in this District have found such modifications "reasonable" because they "merely restrict[] where [defendant]'s proposed material may be accessed." *Laixion Network Tech. Ltd. v. Meta Platforms Inc.*, No. 25-cv-3227-JSC (N.D. Cal. July 11, 2025), Dkts. 86, 89 § 14.3 (entering PO prohibiting protected material from leaving "the territorial boundaries of the United States" and requiring receiving party to "confirm[] that no unauthorized foreign person [regardless of location] has access to such technical data"); *see also Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 22-cv-4223-JSC (N.D. Cal. Apr. 7, 2023), Dkt. 74 § 13.4 (similar).

Apple also proposes the following modifications to the Model PO to clarify ambiguities that have been acknowledged by courts in this District, implement Apple-specific source code inspection processes, ensure adequate protection for Apple's highly sensitive confidential and trade secret information, and address what should be a non-controversial clarification regarding third-party litigation funders.

***The Protective Order should clarify that Protected Material may not be used to bring future litigation (Apple PO § 7.1).*** Apple has proposed a narrow revision to the model to clarify that use of Protected Material is limited only to prosecuting, defending, or attempting to settle *this* litigation, and may not be used to pursue or prosecute future litigation against the Designating

Party. This clarification is a far cry from the hypothetical provision to which Plaintiffs object— and it is necessary because, as some courts in this District have acknowledged, "the term 'use' benefits from clarification," including to clarify that the model PO does not permit "the 'mining' of protected material as a source for other potential actions." *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-3811-EKL (N.D. Cal. Dec. 31, 2025), Dkt. 561 at 3-4. Plaintiffs' statement that Apple refused to clarify this section is incorrect. Apple revised this provision to address Plaintiffs' concern that it would prevent them from filing additional claims in this lawsuit, and invited further edits from Plaintiffs, but they provided none.

***Mock jurors should not be shown "Highly Confidential – Attorneys' Eyes Only" material (Apple PO § 7.3).*** Apple has agreed to *expand* the list of persons with access to Protected Material beyond the Model PO to include mock jurors. Specifically, Apple's proposal permits mock jurors to review "Confidential" materials but restricts the presentation of "Highly Confidential – Attorneys' Eyes Only" materials to arguments and materials derived from documents. Plaintiffs' request to show the underlying "Highly Confidential – Attorneys' Eyes Only" materials to mock jurors should be rejected as unsupported and unnecessary. This case involves highly sensitive and trade secret information, and the local jury pool (from which mock jurors are typically drawn) is likely to include people in the technology industry with whom it could be competitively harmful for Apple to share such information.

***The Protective Order should include reasonable source code inspection procedures (Apple PO § 9).*** Apple proposes sensible modifications to the Model PO's source code provisions to account for the practical and technical realities of making its code available for review within a secure review environment. Source code discovery in this case will be entirely one-sided, and Apple proposes modifications tailored to its own processes to clarify review procedures, minimize disputes, and ensure that inspection proceeds smoothly and efficiently. Apple proposes reasonable restrictions on printing, copying, and storage of code, and procedures for use of source code at depositions. *Id.* §§ 9(d)-(i). Such provisions are necessary to ensure that Apple's most commercially sensitive information is afforded protections commensurate with the extraordinary competitive harm that would result from its unauthorized disclosure or duplication. Contrary to Plaintiffs' hyperbolic assertions about the "impossibility" of using source code, Apple's proposal is consistent with other inspection procedures entered by courts in this District and based on significant experience in source code inspections. *See Apple Inc. v. AliveCor, Inc.*, No. 22-cv-7608-HSG (SK) (N.D. Cal. Sept. 12, 2025), Dkt. 164 § 10; *LS Cable & Sys. Ltd. v. Apple Inc.*, No. 24-cv-9194-JD (N.D. Cal. June 18, 2025), Dkt. 37 § 11. Plaintiffs focus their opposition on Apple's proposed number of printed pages, citing to cases with higher page limits. But tellingly, when Apple invited Plaintiffs to make a page-limit counter-proposal so the parties could negotiate and potentially reach compromise, Plaintiffs refused to make any.

***Receiving Parties should maintain the security of the Protected Materials (Apple PO § 10).*** Apple's proposal calls for industry-standard data security measures to prevent unauthorized access to sensitive data and mitigate risk after a breach. Apple's core business is the protection of data from users, partner businesses, and Apple's own trade secrets, business strategy, and financial information. Plaintiffs have requested discovery that will implicate such information. Apple is prepared to comply with this provision and is confused as to why Plaintiffs are unwilling to do the same, especially when their objection is theoretical and not grounded in any specific inability to comply. Apple does not want to "micromanage Plaintiffs' systems"—it wants a minimum framework for ensuring data security, thus ensuring that the requirements of the PO are enforced. Despite claiming that they "already employ robust information security measures," Plaintiffs were unaware what those systems were during the meet and confer process. Numerous courts in this

District have entered protective orders consistent with the provisions that Apple proposes here. *See Edwards v. Apple Inc.*, No. 24-cv-5795-NW (NMC) (N.D. Cal. Sept. 23, 2025), Dkt. 78 § 10; *LS Cable & Sys. Ltd.*, No. 24-cv-9194-JD, Dkt. 37 § 14; *Apple Inc. v. Starr Surplus Lines Ins. Co.*, No. 24-cv-3738-RFL (N.D. Cal. Apr. 21, 2025), Dkt. 72 § 10; *Apple Inc. v. Rivos, Inc.*, No. 22-cv-2637 (N.D. Cal. Oct. 31, 2022), Dkt. 113 § 8.

Apple's proposal covers three key concerns. *First*, Apple proposes compliance with an industry-standard cybersecurity framework, such as the Center for Internet Security or another well-recognized industry or government cybersecurity group. These are frameworks with which many vendors and companies already comply, and are necessary to protect against well-documented increasing data security risks in litigation. *Second*, Apple proposes encryption and implementation of multi-factor authentication, which is a simple, highly effective security mechanism that is routinely used to safeguard data and mitigate the risk of unauthorized access. *See Next Level MFA: FIDO Authentication*, Oct. 18, 2022, https://www.cisa.gov/news-events/news/next-level-mfa-fido-authentication. *Third*, Apple proposes a process to facilitate prompt mitigation and remediation of a data breach, including notifying and providing information about the breach. These remediation measures will protect sensitive business, customer, and third-party information, and ensure that the producing party can appropriately redress any data breach.

***The Protective Order should clarify that litigation funders are restricted from access (Apple PO § 15.6).*** Apple requests that the PO expressly prohibit litigation funders from accessing the highly sensitive and confidential technology at issue. This should be noncontroversial, yet Plaintiffs have resisted based on counsel's prior representation that "we do not rely on litigation funding in this case." Jan. 27, 2026 Hr'g Tr. at 16:19-21. Counsel's past representation that they were not *presently* relying on litigation funding provides no assurance about the future or access to discovery. Nor does Local Rule 3-15, which only addresses disclosure, provide such assurances.

## II.    PLAINTIFFS' STATEMENT

When Apple was asked at the last conference "Why aren't you using the standard?", Apple said that it expected to "move substantially back towards the standard." Tr. of Hr'g, May 11, 2026, at 5:16–17, 6:1–3. Yet, contravening the Court's clear direction and its own promise, Apple's current proposal contains hundreds of substantial changes and two entirely new sections, all of which constitute further departures from the model order. These deviations fly in the face of the Court's admonition that "unless there's a reason to deviate, we shouldn't be deviating." *Id.* at 6:7–9.

In fact it is Apple's consistent practice in this District to push for significant departures from model protective orders. In doing so, Apple undermines the very purpose of a model order: "to cut down on disputes." *Id.* at 6:7–9. Judges in this District have repeatedly rejected Apple's demands. *See, e.g.*, *Societe du Figaro, SAS v. Apple Inc.*, 22-cv-04437-YGR (TSH) (N.D. Cal. Jan. 17, 2023), Dkt. 57 (Magistrate Judge Hixson rejecting Apple's proposed edits, including on data security); *Bodenburg v. Apple Inc.*, 3:23-cv-04409-TLT (N.D. Cal. May 6, 2024), Dkt. 58 (District Judge Trina Thompson rejecting Apple's proposed order without prejudice—even though it was *stipulated*—because it "depart[ed] from the Model Protective Order" too dramatically). This Court should do the same.

As the District Judge and Magistrate Judge's rules recognize, the model order's conditions are "presumptively reasonable." *EPL Holdings, LLC v. Apple Inc.*, No. 3:12-cv-043060-JST (JSC), 2013 WL 2181584, at *1 (N.D. Cal. May 20, 2013) (citation omitted). The burden to overcome that presumption rests on the party seeking deviation, who must "show that specific prejudice or

harm will result" absent the requested protection. *Id.* (citation omitted). Apple cannot make that showing. Apple's only justification is that its information is competitively sensitive. But this district—home to some of the world's most valuable companies—has model orders to address such concerns..

Plaintiffs have worked toward compromise by moving from the standard to the patent order as a baseline, at Apple's insistence, and by agreeing to certain limited adjustments to that order, commensurate with the needs of the case. Apple continues to demand bespoke provisions going far beyond the patent model order, without justification. The Court should reject Apple's rewrites and instead adopt language from the model order, which has been crafted to account for all of the concerns Apple expresses now in support of deviation.

***The Court should not include a blanket export-control provision*** (Section 15.3). Ordinarily, a party seeking an export-control provision in a protective order must identify specific items and regulations at issue—and even then often fails. *See, e.g.*, *Tucson Embedded Sys. Inc. v. Turbine Powered Tech. LLC*, No. 4:14-cv-01868-TUC (BGM), 2015 WL 13574283, at *3 (D. Ariz. Nov. 24, 2015) (denying motion despite citations to ITAR and representations that party's source code was ITAR-controlled). In contrast, here, Apple has not identified a <u>single</u> export-controlled item conceivably within the purview of discovery. Apple thus cannot show "specific prejudice or harm." Unsurprisingly, <u>none</u> of Apple's citations involved an affirmative court order imposing an export-control provision, over the objection of a party, in a case like this one.

Apple's export control language—with no mechanism for challenging representations by Apple that items are controlled—would significantly prejudice Plaintiffs. Some export control regulations govern "deemed exports," under which the transfer of information to foreign nationals, even inside the United States, is deemed an export of that information to the foreign national's home country. Apple's language would give Apple effective veto power over any foreign-national attorney or expert employed by Plaintiffs, simply by claiming that information is export-controlled. The Court should deny this unjustified inclusion. Any export control issues can be handled on an ad hoc basis, if and when Apple identifies an actual conflict.

***The Court should not include a patent prosecution bar*** (Section 8). This is not a patent case. Plaintiffs agreed to adopt the patent order as a baseline to avoid unnecessary disputes. But the model patent order's optional patent-specific provisions—including a bar designed to prevent misuse of information in *future patent applications* and related litigation—do not apply here. The only argument Apple presents in favor of imposing a patent prosecution bar in a copyright infringement case is that "courts regularly" do so. But <u>none</u> of Apple's citations involved an affirmative court order imposing a patent prosecution bar, over the objection of a party, in a non-patent case. A party seeking to impose a patent prosecution bar must first show that "the information designed to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Applied Signal Tech., Inc. v. Emerging Mkts. Commc'ns, Inc.*, No. 3:09-cv-02180-SBA (DMR), 2011 WL 197811, at *2 (N.D. Cal. Jan. 20, 2011) (citation omitted). Apple has not and cannot do so, as a bar is unnecessary in non-patent litigation.

Five courts, including four in this district, have approved orders in similar litigation without a patent prosecution bar. *See Bartz v. Anthropic PBC*, 4:24-cv-05417-AMO (N.D. Cal.), Dkt. 62; *In re Mosaic LLM Litigation*, 3:24-cv-01451-CRB (N.D. Cal.), Dkt. 62; *In Re Google Generative AI Copyright Litigation*, 5:23-cv-03440-EKL (N.D. Cal.), Dkt. 119; *Doe 1 v. Github*, 4:22-cv-06823-JST (N.D. Cal.), Dkt. 63; *In re OpenAI Copyright Infringement Litig.*, No. 1:25-md-03143-

SHS-OTW (S.D.N.Y.), Dkt. 357. This Court should follow their examples.

***The Court should not unduly restrict mock jurors' access to Protected Material* (Sections 7.3).** Apple's proposal would exclude mock jurors from seeing AEO material. This runs contrary to the model order, which provides as an alternative the inclusion of mock jurors in AEO designations, which Plaintiffs' proposed order adopts. The AEO designation could conceivably apply to any document, so Apple's proposal creates a one-sided disadvantage to Plaintiffs in trial preparation: While Apple can show its mock juries any designated material it wants, Plaintiffs will be hamstrung—unable to fully test potentially large swaths of its evidence. Courts routinely trust all participants who have signed agreements to be bound by the Protective Order to fulfill their responsibilities. The same should occur here.

***The Court should not add vague restrictions on "use" of Protected Material* (Section 7.1).** Other courts in this District have already recognized that the added language Apple seeks—forbidding "use" of Protected Material for any other purpose "whatsoever"—is vague in the extreme, "overbroad," and even "absurd." *Concord Music Group v. Anthropic PBC*, 24-cv-03811-EKL (SVK) (N.D. Cal.), Dkt. 561 at 3 (citation omitted). A protective order "cannot require lawyers to 'achieve total amnesia' but rather must permit them to 'learn from and use their *experience* obtained in discovery.'" *Id.* (citation omitted). Plaintiffs asked Apple to tailor and clarify its terminology. Apple refused. The provision Apple seeks is neither necessary nor workable—a recipe for further litigation. This court, following other courts' lead, should reject it.

***The Court should reject Apple's unreasonable source-code procedures* (Sections 9(d)-(j)).** Plaintiff has already agreed to abide by the model order on source code: to inspect source code in-person on a specially provided computer, limit requests for paper copies to those "reasonably necessary," and keep a log of individuals who inspect that code. Apple's wholesale rewrite of the model order would make the use of source code impractical to the point of impossibility. Apple seeks an unprecedentedly restrictive limitation on printouts of source code, in which a 5-page request is "presumed to be excessive" and Plaintiffs "may print out no more than 20 pages total." Typical agreements are many multiples of those caps. *See, e.g.*, *MicroUnity Sys. Eng'g, Inc. v. Adobe, Inc.*, No. 5:13-MC-80020-LHK (PSG), 2013 WL 2384261, at *3 (N.D. Cal. May 30, 2013) (700-page total cap); *Withrow Networks, Inc. v. Google, LLC*, No. 5:24-CV-03203-PCP (VKD), 2025 WL 948120, at *2 (N.D. Cal. Mar. 28, 2025) (25-page requests, 750-page total cap). Apple's attempt at a unilateral limit is beyond the pale. Apple's further demands—limitation to three paper copies of source code with no electronic scans; and a bar against Plaintiffs bringing copies of source code to depositions, absent *10 days' notice* to Apple, in which case *Apple* would bring the code copies—would create a highly uneven playing field in discovery. Apple's paragraphs of new source-code restrictions lack precedent and justification. These provisions, which go far beyond the protections already provided by the model order, should be rejected.

***The Court should not allow Apple to micromanage Plaintiffs' internal systems* (Section 10).** Apple invents out of whole cloth an information security management system and demands that Plaintiffs adhere to it. The Northern District imposes no such requirements. Apple has pointed to no court order imposing such requirements on a party over its objection. And no other AI company has attempted to impose such requirements. Plaintiffs' counsel already employ robust information security measures to protect the information of all their clients, opponents, and third parties. Apple does not and cannot represent to the Court that Plaintiffs' existing security measures are insufficient. Their bid to micromanage Plaintiffs' systems must be rejected.

***The Court should not add a provision regarding litigation funders* (Section 15.6).** Plaintiffs have confirmed on the record that they are not using third-party litigation funding for

JOINT STATEMENT RE:
PROTECTIVE ORDER SUBMISSION AND DISPUTE
CASE NO. 4:25-cv-07558-YGR

this case. Tr. of Hr'g, January 27, 2026, at 16:19–21. If that changes, Plaintiffs are obligated under Local Rule 3-15 to promptly disclose that. Apple's proposed provision, barring Plaintiffs from sharing designated information with non-existent litigation funders, is unnecessary.

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing **JOINT STATEMENT REGARDING PROTECTIVE ORDER DISPUTE.** Pursuant to L.R. 5-1(i)(3) regarding signatures, I, Nicole C. Valco, attest that each of the other Signatories have concurred in the filing of the document.

Dated: May 21, 2026                                     /s/ *Nicole C. Valco*
                                                                    Nicole C. Valco

JOINT STATEMENT RE:
PROTECTIVE ORDER SUBMISSION AND DISPUTE
CASE NO. 4:25-cv-07558-YGR