William Dreher (*pro hac vice*)
Derek W. Loeser (*pro hac vice*)
Cari C. Laufenberg (*pro hac vice*)
Benjamin Gould (SBN 250630)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
(206) 623-1900
wdreher@kellerrohrback.com
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
bgould@kellerrohrback.com

Matthew Butterick (SBN 250953)
**BUTTERICK LAW PC**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttoricklaw.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
rnath@susmangodfrey.com
*Additional Counsel Listed in Signature Block*

**LATHAM & WATKINS LLP**
Andrew M. Gass (Bar No. 259694)
andrew.gass@lw.com
Joseph R. Wetzel (Bar No. 238008)
joe.wetzel@lw.com
Melanie M. Blunschi (Bar No. 234264)
melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
nicole.valco@lw.com
505 Montgomery St., Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200
*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| GRADY HENDRIX ET AL., | No. 4:25-cv-07558-YGR |
| *Individual and Representative Plaintiffs*, | |
| v. | **JOINT STATEMENT REGARDING DISPUTE OVER SUBSTANTIAL COMPLETION OF DOCUMENT DISCOVERY DEADLINE** |
| APPLE INC., | |
| *Defendant*. | Magistrate Judge Ajay S. Krishnan |
| This Document Relates to: All Consolidated Actions | |

Pursuant to Section 5 of Your Honor's Civil Standing Order, Plaintiffs Grady Hendrix, Jennifer Roberson, John Hornor Jacobs, and Eboni McKinnon ("Plaintiffs"), and Defendant Apple Inc. ("Apple," and, together, the "Parties") submit this joint statement regarding whether to set a substantial completion deadline for document discovery.

On June 29, 2026, Judge Gonzalez Rogers entered a Case Management and Pretrial Order setting a case schedule through summary judgment. Dkt. 114. The Court did not set a deadline for substantial completion of document productions, but stated that "[t]o the extent the parties request assistance to resolve their dispute regarding whether to set a substantial completion deadline, they may submit the matter to Magistrate Judge Krishnan, who has been referred for all discovery matters in this action." *Id.* at 1 n.1.

Despite meeting and conferring, the Parties disagree regarding whether a substantial completion deadline is necessary. The Parties' respective positions are set forth below.

DATED: July 16, 2026                     KELLER ROHRBACK L.L.P.


By *s/ William K. Dreher*

William K. Dreher, *Pro Hac Vice*
Benjamin Gould (SBN 250630)
Derek W. Loeser, *Pro Hac Vice*
Chris N. Ryder, *Pro Hac Vice*

Samuel Rubinstein, *Pro Hac Vice*
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
(206) 623-1900
Fax (206) 623-3384
wdreher@kellerrohrback.com
bgould@kellerrohrback.com
dloeser@kellerrohrback.com
cryder@kellerrohrback.com

srubinstein@kellerrohrback.com


SUSMAN GODFREY L.L.P.


By *s/ Rohit D. Nath*
Rohit D. Nath (SBN 316062)

Justin A. Nelson, *Pro Hac Vice*
Alejandra C. Salinas, *Pro Hac Vice*
Jordan Connors, *Pro Hac Vice*
Eleanor Runde, *Pro Hac Vice*
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
 (310) 789-3100
rnath@susmangodfrey.com
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com
jconnors@susmangodfrey.com
erunde@susmangodfrey.com

By *s/ Matthew Butterick*
    Matthew Butterick (SBN 250953)
    BUTTERICK LAW PC
    1920 Hillhurst Avenue, #406
    Los Angeles, CA 90027
    mb@butticklaw.com

    Attorneys for Plaintiffs


DATED: July 16, 2026          **LATHAM & WATKINS LLP**


By *s/ Nicole C. Valco*
    Andrew M. Gass (Bar No. 259694)
    andrew.gass@lw.com
    Joseph R. Wetzel (Bar No. 238008)
    joe.wetzel@lw.com
    Melanie M. Blunschi (Bar No. 234264)
    melanie.blunschi@lw.com
    Nicole C. Valco (Bar No. 258506)
    nicole.valco@lw.com
    505 Montgomery St., Suite 2000
    San Francisco, California 94111
    Telephone: +1.415.391.0600
    Elana Nightingale Dawson (*pro hac vice*)
    elana.nightingaledawson@lw.com
    555 Eleventh Street, NW, Suite 1000
    Washington, D.C. 20004-1304
    Telephone: +1.202.637.2200

    *Attorneys for Defendant Apple Inc.*

### I.    PLAINTIFFS' POSITION

Apple asked for an accelerated fact discovery period (Dkt. No. 113), and the Court granted Apple's request (Dkt. No. 114). The Court did not rule on the need for a substantial completion deadline but invited the Parties to brief the issue if necessary. Dkt. No. 114 at 1 n.1. Now, fact discovery for Plaintiffs' claims and Apple's defenses closes in 9 months. This expedited discovery period requires expedited production of documents. Accordingly, Plaintiffs accept the Court's invitation and request a substantial completion deadline. The practical realities of working up the case require that production of relevant documents be substantially completed at least 6 months before the close of fact discovery. Setting such a deadline for October 15, 2026 is warranted here for the following three reasons.

First, Apple privately holds most of the relevant information in this case. Plaintiffs' case is about Apple's acquisition, copying, and use of copyrighted books to develop products and services using Artificial Intelligence. Apple has the datasets of copyrighted books that Apple downloaded, crawled, scraped, and otherwise acquired. Complaint ¶¶ 2–4. Apple has the copies it made of those datasets to develop them into private libraries and training data. *Id.* Apple has the training data itself and the Language Models that Apple trained with that data. *Id.* Apple has the source code it used to acquire and use the training data. *Id.* Apple has internal communications showing how it used Plaintiffs' copyrighted books and whether Apple knew those books were copyrighted and valuable to its stock central library and the LLM training process. Apple has the licenses it reached and licensing discussions it engaged in material to the "fair use" defense that Apple has asserted. *See* Dkt. 83 at 22.

Second, the information Apple holds is technical and complicated, and Plaintiffs need an opportunity to review it before deposing witnesses and serving follow-on discovery. This is not a case that will be resolved based on a small number of key contracts or emails. Apple's fair use defense, for example, implicates a four-factor test that asks, among other questions, whether "repeated and exploitive unauthorized copies of copyrighted works were made to save the expense of purchasing authorized copies," *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 779 (9th Cir. 2006) (quotation omitted), and "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original," *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022) (cleaned up). Answering these questions—and identifying the appropriate deponents to answer these questions—requires examining highly technical documents, training data, source code, and internal emails and documents demonstrating how Apple acquired the copyrighted books at issue and what uses Apple made of them. Plaintiffs need to ensure that Apple has substantially completed production of the documents Plaintiffs requested months ago to complete discovery on the expedited schedule ordered by the Court. Against this backdrop, Apple's proposal is telling. Apple asks for a substantial completion deadline of February 15, 2027. This leaves Plaintiffs two months to review the entirety of Apple's document production, provide relevant documents to expert witnesses, identify relevant deponents, and then prepare for and ultimately take depositions. As the Court is well aware, this is an insufficient amount of time in a case of this complexity.

Third, without a substantial completion deadline, discovery has moved at a glacial pace. Plaintiffs served their first sets of document requests on April 29, 2026, requesting the kinds of documents, communications, and data laid out above. More than two months have transpired,

and Apple has produced less than 500 pages, only producing nine pages before last week (July 7, 2027). Despite Plaintiffs' prodding, Apple has not indicated when it will begin producing additional documents, including its training datasets or copies of Books3 it acquired. Instead, Apple suggests the slow pace of document production is due to the need to negotiate an ESI protocol and Protective Order, which were entered on June 10 and July 7, respectively. But Plaintiffs sent Apple a proposed ESI protocol on April 10 and a proposed protective order on April 14. The length of time it took to finalize those protocols, including a month after this Court's rulings on disputes over the Protective Order, itself illustrates that discovery is not proceeding quickly.

In any event, Apple does not explain why it cannot produce training datasets or copies of Books3 now. Instead, Apple claims it needs *another* protocol for inspecting training data three months after the Parties began negotiating the ESI protocol and protective order. While Plaintiffs plan to promptly negotiate with Apple, this new protocol poses further needless delay and unilaterally impacts Plaintiffs ability to obtain discovery since Apple is the only party producing training data in this case.

Ultimately, a substantial completion deadline will establish an expectation for both parties, to allow the parties to meet Apple's requested expedited timeline and avoid any disputes about gamesmanship. *E.g.*, *Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 959 (N.D. Cal. 2025) (holding that "Apple engaged in tactics to delay the proceedings" including "asserting privilege over more than a third of responsive documents" before withdrawing 42.1 percent of those claims). Apple does not meaningfully provide a basis for having *no* substantial completion deadline here; any "ancillary disputes" in late October over whether document discovery was substantially completed would still put the parties in a better, more timely position than having the same disputes inevitably arise in February 2027.

Accordingly, Plaintiffs request a substantial completion deadline of October 15, 2026, by which the Parties must produce all documents and data responsive to discovery requests served by May 29, 2026.

## II.    APPLE'S POSITION

The Court declined to set a substantial completion deadline in the scheduling order, and none is needed. *See* Dkt. 114. If a dispute arises about the pace of either sides' response to documents requests, the Parties may raise the dispute with the Court at that time. But an interim deadline for substantial completion of certain document discovery is likely to burden the Court with unnecessary disputes—as demonstrated by this purely theoretical dispute. Apple is actively producing documents on a rolling basis. The Court just entered the Protective Order on July 7, Apple proposed a training data inspection protocol on July 9, and the Parties have continued to make steady progress on discovery in the meantime.

As an initial matter, Plaintiffs' claim that discovery has proceeded "at a glacial pace" is inaccurate. Plaintiffs served 70 broad document requests on or before May 29 (which would be subject to Plaintiffs' proposed deadline), as well as nine more requests on June 12. Apple has served written responses and objections, in addition to responding to 46 requests for admission and 11 interrogatories. Apple has spent more than five hours across five separate videoconference calls meeting and conferring with Plaintiffs about the document requests, with additional time being scheduled. The focus of those conferrals has been to compromise and resolve disputes

regarding the scope of Plaintiffs' requests.

In the meantime, Apple has produced 468 pages of documents, as well as an entire code repository related to its OpenELM research model that includes source code related to the model and associated historical information. The code repository, which comprises more than 750 files, is labeled with a single Bates number, so the number of documents and pages produced does not fully reflect the amount of information that Apple has produced. Apple intends to continue to work with Plaintiffs to provide responsive materials, which will include negotiation of custodians and search terms and source code inspection.

In contrast, Plaintiffs have produced only 65 documents consisting of copyright registrations and publishing agreements related to a subset of their Asserted Works. They have not produced large swaths of requested documents, including those related to sales, revenue, or any alleged market harm. Nor have Plaintiffs proposed any custodians or search terms for their own ESI search process.

The amount of time required to meet and confer about Plaintiffs' requests is necessitated by their overbreadth. For example, Plaintiffs seek all "Training Data for [Apple's] Language Models" and "[a]ll Data copied or modified during any stage of Training for any Apple LLM," without any limits as to time period, models, datasets, or types of data, encompassing a staggering volume of data. Nor do the requests reflect the limited scope of discovery that the Court ordered, which focuses only on named Plaintiffs' individual works. *See* Dkt. 114 at 1 (limiting "merits fact discovery" to issues relevant to the named plaintiffs' claims and Apple's defenses). Apple will continue to confer with Plaintiffs to further narrow and reach agreement on the scope of discovery.

In parallel, the Parties have been working through several threshold discovery issues that needed to be resolved before Apple could begin producing documents at scale. That included the Protective Order, which required the Court's guidance to resolve disputes and was just entered on July 7. Dkt. 116. The Parties also engaged in significant negotiations to agree upon a stipulated ESI protocol filed on June 10. Dkt. 111. Apple's production was necessarily limited until both were in place.

Pursuant to the ESI protocol, Apple has also been developing a comprehensive training data inspection protocol consistent with the approaches taken in other AI copyright cases. *See, e.g.*, *Concord v. Anthropic*, Case No. 5:24-cv-3811-EKL-SVK (N.D Cal. July 3, 2025), Dkt. 386; *Bartz v. Anthropic*, Case No. 3:24-cv-5417-WHA (N.D. Cal. Feb. 11, 2025), Dkt. 83; *In re OpenAI ChatGPT Litig.*, Case No. 3:23-cv-3223-AMO (N.D. Cal. Sept. 24, 2024), Dkt. 182. Plaintiffs demand production of *all* of Apple's highly sensitive and proprietary training data, but so far have resisted discussing a protocol to address the complexities of the technical infrastructure required to make massive, structured datasets available for inspection. Plaintiffs cannot have it both ways. A dedicated protocol is standard procedure in AI cases—including cases involving the same lead counsel as this case—and is needed to establish how Plaintiffs will access and inspect such data, including with specific tools for search and review, while safeguarding Apple's proprietary information. Apple sent Plaintiffs a proposed training data inspection protocol on July 9, and Plaintiffs have not yet responded. Apple would like to finalize an inspection protocol as soon as possible so that it can start making applicable data available for review.

Plaintiffs' supposed fears about "gamesmanship" are hypothetical and unfounded. As its actions already show, Apple intends to comply with its discovery obligations and do so

expeditiously—indeed, as Plaintiffs acknowledge, it was Apple that proposed a more aggressive case schedule than Plaintiffs. At Apple's request, the Court entered an accelerated case schedule on June 29 that will allow the Court to resolve summary judgment on Apple's fair use affirmative defense early in the case. *See* Dkt. 114. That case schedule set the close of "Merits Fact Discovery (Individual Plaintiffs' Claims, Apple's Defenses)" on April 30, 2027. Dkt. 114 at 1. Apple has every intention of completing a robust merits fact discovery process on that timeline to support its motion for summary judgment.

For all of these reasons, there is no need for a substantial completion deadline—and certainly not Plaintiffs' proposed date of October 15, 2026 for its first 70 document requests. The primary purpose of a substantial completion deadline is to ensure document discovery concludes early enough for depositions to proceed. Apple is already making productions and intends to continue to do so on a rolling basis. The Parties do not need six months to conduct depositions in this case, and Plaintiffs' suggestion that they have to wait until some interim substantial completion deadline to "review the entirety of Apple's document production," so they can start working with experts, identifying relevant deponents, and taking depositions, is incorrect. Plaintiffs can and should start to review and utilize the information in Apple's productions as Apple rolls them out.

A substantial completion deadline that early in the discovery period also risks circumventing conferrals about objections and scope and would not allow reasonable time for the Parties to work through disputes on their own. Plaintiffs' proposal is also likely to create ancillary disputes over compliance with an arbitrary benchmark. Apple respectfully requests that the Court reject Plaintiffs' request for an interim substantial completion deadline and allow the Parties to continue to make discovery progress consistent with their obligations under the Federal Rules of Civil Procedure and the existing case schedule.

If the Court is nevertheless inclined to impose a deadline, Apple submits that the deadline should account for the breadth of Plaintiffs' requests and time needed to reach agreement on an ESI search process and complete the resulting document review and production. A target substantial completion date of February 15, 2027, for requests served by September 30, 2026, would be a more reasonable framework. Apple intends to continue to produce documents on a rolling basis over the next several months, so Plaintiffs' concerns about having only two months to identify deponents and take depositions are unfounded.

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the **Joint Statement**. Pursuant to Local Civil Rule 5-1(i)(3) regarding signatures, I, William K. Dreher, attest that the other signatory has concurred in the filing of the document.

Dated: July 17, 2026

*s/ William Dreher*
William Dreher